# GROESBECK v. LAKE SIDE PRINTING CO.

No. 3362.　Decided December 3, 1919.　(186 Pac. 103.)

1. APPEAL AND ERROR—EVIDENCE CONSIDERED FAVORABLY TO PLAINTIFF ON REVIEW OF JUDGMENT ON DIRECTED VERDICT. On plaintiff's appeal from judgment for defendant on directed verdict, the Supreme Court will consider and apply the evidence in the light most favorable to plaintiff's cause of action. (Page 338.)

2. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE OF INEXPERIENCED JOB PRESS FEEDER FOR JURY. Whether inexperienced fourteen year old job press feeder operating a "rocker tail" job press was contributorily negligent in placing his hands between the upper edge of the rocker tail and the crank shaft, for purpose of rescuing a slip which had been printed and which he

had been instructed not to spoil or lose, *held* for the jury under the evidence.  (Page 342.)

3.  MASTER AND SERVANT—APPRECIATION OF DANGER BY MINOR EMPLOYÉ JURY QUESTION.  Where it is not clear from all the facts and circumstances, including the age and experience of minor employé, whether he ought to have known and appreciated the danger of the work he was doing, the question of whether he did appreciate the danger is one of fact for the jury and not of law for the court.  (Page 342.)

4.  EVIDENCE—JUDICIAL NOTICE.  It is a matter of common knowledge that it is lack of judgment, rather than want of knowledge, which minimizes both fear and caution in the young and inexperienced mind.  (Page 342.)

5.  MASTER AND SERVANT—NEGLIGENCE OF MINOR EMPLOYÉ PRECLUDES RECOVERY FOR INJURIES.  The law does not permit a minor servant to escape the consequence of his own negligence, where it is clear that he did know and appreciate, or must have known and appreciated, the danger.  (Page 343.)

6.  MASTER AND SERVANT—NEGLIGENCE IN FAILING TO WARN YOUTHFUL INEXPERIENCED EMPLOYÉ JURY QUESTION.  In action for injuries to inexperienced fourteen year old job press feeder, where there was evidence that both acting foreman, who employed him, and the general foreman, observed that he was not an experienced or skilled press feeder, whether it was negligence *not to instruct or warn him as to the danger of the work held* for jury.[1]  (Page 344.)

7.  MASTER AND SERVANT—EMPLOYER MUST WARN MINOR OPERATING MACHINERY.  Owners of machinery, who employ minors to operate the machinery, must see to it that the minors are properly instructed and cautioned with respect to all the dangers that are necessarily incident to the operation of such machinery.  (Page 344.)

Appeal from District Court, Third District, Salt Lake County; *R. S. Porter,* Judge.

Action by Percy Groesbeck against the Lake Side Printing Company.

Judgment for defendant, and plaintiff appeals.

---

[1] *Stam* v. *Ogden Packing & Provision Co.,* 53 Utah, 248, 177 Pac. 218.

REVERSED and REMANDED, with directions.

*Morgan & Huffaker* and *M. L. Ritche,* all of Salt Lake City, for appellant.

*Stewart, Stewart & Alexander,* of Salt Lake City, for respondent.

FRICK, J.

The plaintiff, a minor, by his guardian ad litem, brought this action against the defendant, a corporation, in the district court of Salt Lake county, to recover damages for personal injuries. The district court directed a verdict for the defendant, from which the plaintiff appeals.

The plaintiff, in his complaint, in substance alleged that he is a minor of the age of fourteen years; that the defendant is a corporation, and at the time of the injury complained of he was in its employ; that some time after he entered the employ of the defendant, the date being stated in the complaint, he was directed to work at a job press and directed to print numbered memoranda slips and was directed not to lose any "as they were numbered in a series"; that when he entered said employment the plaintiff "was entirely inexperienced in the use of machinery and ignorant of the danger surrounding the use of said machine (said job press)"; that the defendant failed to instruct the plaintiff as to the proper manner of operating said job press and failed to warn him of the dangers incident to its operation; and that defendant negligently directed him to operate said job press without explaining the dangers to which one inexperienced in operating the same would be exposed, etc.; "that while operating said machine or press one of said memoranda slipped from plaintiff's hand and fell to the interior of said press machine," and plaintiff, in attempting to take said memorandum slip from said press, got his fingers "caught in said machine and crushed," etc. After alleging that plaintiff was paid one dollar per day for his services, and making other necessary allegations respecting

the injury and damages, plaintiff prayed judgment.

Defendant, in its answer, admitted the allegations respecting employment, the age of the plaintiff, and that he was earning one dollar per day, and denied all the alleged negligence on the part of the defendant. The defendant, with great particularity and detail, described the job press and how it was operated and how the injury to plaintiff occurred. As an affirmative defense, it alleged that whatever danger there was in operating said job press was open and obvious to any one; that plaintiff knew and appreciated the danger, and "whatever injuries that the said plaintiff suffered were received on account of plaintiff's gross carelessness and contributory negligence."

After the plaintiff had produced his evidence in support of the allegations of his complaint, and rested, the defendant moved the court for a directed verdict. The court granted the motion and directed the jury to return a verdict in favor of the defendant. The court based its ruling upon two grounds: (1) That under the evidence adduced by the plaintiff the defendant was not guilty of negligence in failing to instruct or warn him in operating the job press; and (2) that whatever danger there was in operating said job press was open and visible to the plaintiff, and that he must have seen it in attempting to rescue the memorandum slip from the press, and was therefore guilty of negligence as matter of law.

It is impractical to set forth the evidence within the limits of an opinion. Moreover, in view that we feel constrained to reverse the judgment upon the ground that the evidence was sufficient to take the case to the jury, and for that reason a new trial must be granted, we shall refrain as much as possible from discussing the effect of the evidence. We shall therefore, as briefly as possible, merely refer to the substance of the evidence relating to the controlling facts. In that connection it must be kept in mind, however, that in view that the court disposed of the case on defendant's motion the evidence must be considered and applied most favorable to the plaintiff's cause of action.

The evidence, without conflict, shows that when plaintiff

was employed by the defendant he was fourteen years and four months of age; that for some time preceding that time, and while he was attending school, he had intermittently and irregularly been engaged in what is called "feeding" a job press for one Coniff; that his experience was quite limited, indeed he had only been feeding what he called cards or heavy paper on Mr. Coniff's job press; that after school closed for the season he was desirous of obtaining something to do in some printing establishment, and with that end in view was passing up Main street in Salt Lake City when he noticed a sign in defendant's window that it wanted a "press feeder"; that he went into the office of the defendant and applied for the position; that the man in charge of the office to whom he applied sent him downstairs; that he went downstairs as he was directed; that the man, who was acting as foreman of the press room on account of the regular foreman's absence on his vacation, merely asked plaintiff where he had worked; that plaintiff told him where he had worked, and the man in charge then asked whether Mr. Coniff still operated the establishment referred to by the plaintiff. The plaintiff told the acting foreman that he did, and the foreman asked him whether he had been feeding a job press for Coniff, and plaintiff told him that he had done so some times. The acting foreman said he was exceedingly busy and that he was short two men and needed help. The acting foreman also testified as a witness for the plaintiff that he did not stop to examine into plaintiff's ability or experience to operate the job press, but set him to work, and that he watched him for a little while; that he set him to work on a machine like the one Mr. Coniff had and noticed that, while plaintiff was not a skilled or experienced "feeder," yet he got along with the work for about two weeks or a little longer, when the foreman of the establishment returned. The foreman also testified for the plaintiff and said that he noticed the plaintiff and in referring to what he observed about him said: "He impressed me as having little experience in feeding presses." The plaintiff was, however, directed to feed certain "sales slips" on the job press. This he did on the afternoon before the day of the injury,

and it was observed that he was not getting along first rate with that work, so he was directed to work on another press. On the following day, however, it seems, he was again placed back to feed the sales slips. These slips were printed on thin paper, to which plaintiff said he was unused, and were serially numbered. He was directed by the foreman not to lose or spoil any of the slips, since if that occurred it would spoil "the book," as the witness termed it.

The evidence shows that the defendant operated two kinds of job presses. One kind had a mechanism which, by the witnesses, is called a "rocker" or "rocker tail," which was in front of the feeder but below the printing mechanism, while the other machine did not have such a mechanism. It seems that, in case the paper or card on which printing was to be done slipped from the guides after it was placed therein by the feeder, it would fall upon this rocker tail in the one kind of press and in the other, which did not have the rocker tail, the paper or card would fall to the floor. It also appears that, while the plaintiff had operated or had been feeding both kinds of presses, he had operated or fed the kind without the rocker tail most, or about two-thirds, of the time that he was in defendant's employ. His testimony, which we must assume to be true, leaves no room for doubt that he did not clearly understand the operation of the so-called "rocker tail," which, it seems, was used as a device to balance other parts of the machinery and was so constructed that when the press was in use it would rise and fall and in doing so would close tight up against the crank shaft which passed horizontally in front of the feeder or operator but below the feeding mechanism. It further appears that in feeding the slips the plaintiff had experienced some trouble, in that some of them would fall on the floor or otherwise get soiled. It also appeared that one of the slips fell upon this so-called "rocker tail," and when the plaintiff noticed it lying there he, without stopping the machine, which he might have done, attempted to "grab" it, as he says, from the rocker tail, and in doing that his fingers were caught between the shaft aforesaid and the upper edge of the rocker tail and injured, so that all four

fingers of his right hand had to be amputated at or near the second joint. The plaintiff, in testifying, clearly indicated, when all of his testimony is considered, that he did not notice the operation of the rocker tail and apparently was not aware that it rose and fell and in doing so would close up tightly against the crank shaft as before stated.

Defendant's counsel insist, and it seems the district court so held, that the movements of the rocker tail were apparent to any one, and that the plaintiff, the same as any one else, was bound to know that, if he placed his hand or fingers between the upper edge of the rocker tail and the shaft aforesaid, they would be injured or crushed. Much time and effort were spent in cross-examining the plaintiff to make him admit that he could see the movements of the mechanism, including the rocker tail, and that he knew what the consequences would be if he got his fingers between the rocker tail and the shaft aforesaid. The plaintiff, it seems to us, in describing how the accident occurred, was very frank. From a consideration of all of his testimony, however, which we shall not pause to repeat here, it is, to say the least, not so clear that a court can say as matter of law that in view of his age and lack of experience and skill he necessarily should have appreciated the danger of attempting to rescue the slip when he saw it lying upon the rocker tail as before stated. The plaintiff frankly admitted, what is but natural, that he desired to avoid the loss of any of the slips which were consecutively numbered. It also appeared that he did not fully succeed, and in view of that became quite concerned or anxious to spoil or to lose as few of the numbered slips as possible, and that he was afraid that if he stopped the machine too frequently or lost or spoiled too many slips he would be "fired," as he puts it, or lose his position. It is quite true, as suggested by defendant's counsel, that the question is not what did the plaintiff actually see, know, or appreciate, but that the question is, what, in view of all the circumstances and his ability to see and appreciate, should he have known and appreciated? It is, however, also true that in case of a minor, unless from all of the facts and circumstances, including the age and ex-

perience of such minor, it is clear that he ought to have known and appreciated the danger, the question of whether he did so or not is one of fact and must be determined by a jury as such and not one of law to be determined by the court as a matter of law. It is clear that both the judge who granted the motion for a directed verdict and the one who subsequently passed upon the motion for a new trial were confident that whatever danger there was in operating the job press was so open and obvious that a child must have seen and appreciated it. The job press was brought into court during the trial, and the manner of operating it in feeding the slips was illustrated to both the court and the jury. If the jury had found the facts against the plaintiff, there would be no escape from their conclusion; but it is not so clear that a court had a right to pass upon the facts against the plaintiff as a matter of law. No doubt both judges were impressed with what they saw demonstrated in their presence. The judges, however, saw only through their own eyes and arrived at their conclusions from the exercise of their mature judgments. It is a matter of such common knowledge that courts, as well as others, are bound to keep it constantly in mind, that it is the lack of judgment rather than the want of knowledge which minimizes both fear and caution in the young and inexperienced mind. While it well may be said that it is just as palpable to a child that it will suffer injury if it jumps out of an open window from an upper story of a building as it is to an adult, yet if the question is one of rescuing some object which is about to fall or is falling out of the open window it is the immature in mind and judgment that will take the greater risk in rescuing the falling object because of their lack of experience and want of mature judgment. It is for that reason that both humanity and the wisdom of the law require that in case a minor is injured— and this is especially true in operating machinery—when the contention is made that the injury is the result of his own negligence, that question, except in rare cases, must be submitted to a jury to be determined as a question of fact and

cannot be determined by a court as a question of law. While the law does not permit a minor to escape the consequences of his own negligence where it is clear that he did know and appreciate, or must have known and appreciated, the danger, yet whether he did or did not know, and, if he knew, whether he appreciated the danger, except in very clear cases, should be determined from all the facts and circumstances in each case. Injustice is far more likely to result from attempting to dispose of such intricate questions of fact by the court as a matter of law, than from submitting the evidence to a jury of men engaged in different callings and with a wide experience, under proper instructions respecting the law. The question of whether the immature mind should be required to suffer the consequences of his acts in view of a particular train of circumstances always presents a more or less delicate question which should not be too hastily determined by a court as a matter of law.

The district court, however, also ruled that defendant was not negligent in failing to instruct or to warn the plaintiff of the danger to which he might be exposed in feeding the presses. In passing upon that question the court said:

"A person making application for any particular job is presumed to know how to do that job."

This was predicated upon the statement that the plaintiff had made application for the job of press feeder. The court, it seems, overlooked the fact that both the acting as well as the general foreman testified that they at once observed that the plaintiff was not an experienced or skilled press feeder. The presumption referred to, if it exists at all in the case of a minor, a question we do not decide, was thus modified if not entirely overcome by what those two witnesses said they observed concerning the plaintiff's skill and ability.

In view of this, we are of the opinion that whether, under all the circumstances, it was negligence not to instruct or to warn the plaintiff, was also a question of fact for the jury and not one of law for the court. Let it be remembered that, if the owners of machinery shall employ minors to operate it, such owners must see to it that the minors are properly in-

structed and cautioned with respect to all the dangers that are necessarily incident to the operation of such machinery. To do that places no hardship upon the owners of machinery and merely effectuates the humane purposes **6, 7** and wisdom of the law. Upon that subject the law is so admirably stated by the Supreme Court of California, in the case of *Foley* v. *California Horseshoe Co.*, 115 Cal. 184, 47 Pac. 42, 56 Am. St. Rep. 87, that we take the liberty of quoting somewhat copiously from the opinion in that case and adopting it as reflecting our own views upon the subject:

"Were the employé in this case an adult, the rule might well be different; but the very reason why an adult under these circumstances would be held to have taken the risk while screwing on the nut serves to show the injustice and hardship which would result if it were sought to be applied to a minor. The question of the taking of a risk, the question of the assumption of responsibility in a given act, is determined as much upon the matter of judgment as upon the matter of knowledge. An adult employé, when the facts are known to him, is presumed in law to exercise the same judgment * * * as would the employer. The employer's duty is fulfilled, and he is not negligent, if he puts the employé in full possession of the facts, and makes him acquainted with the attendant dangers and risks. * * * The conduct of the child, however, is and should be viewed and measured by a different rule. * * * Knowledge he may have; facts he may acquire; but the ability to apply his knowledge or to reason upon his facts comes to him later in life. * * * It would be barbarous to hold him to the same accountability as is held the adult employé, who is an independent free agent. Their conduct is to be judged in accordance with the limited knowledge, experience, and judgment which they possess when called upon to act. And it must, from the nature of the case, be a question of fact for the jury, rather than of law for the court, to say whether or not, in the performance of a given task, the child duly exercised such judgment as he possessed, taking into consideration his years, his experience, and his ability. This must necessarily give rise to a different rule from that so well established, which measures the conduct of the adult by that which might be expected of the ordinarily prudent person placed in the same position."

The foregoing language was approved and adopted by the same court in the case of *O'Connor* v. *Golden Gate, etc., Co.*, 135 Cal. 537, 544, 67 Pac. 966, 969 (87 Am. St. Rep. 127).

To the same effect are the following cases: *Mansfield* v. *Eagle Box, etc., Co.,* 136 Cal. 622, 69 Pac. 425; *Kaillen* v. *Northwestern Bedding Co.,* 46 Minn. 187, 48 N. W. 779, and *Kuphal* v. *Western Mont. Flouring Co.,* 43 Mont. 18, 114 Pac. 122.

In *Mansfield* v. *Eagle Box, etc., Co.,* supra, it is said:

"Common prudence demanded that this inexperienced young man, commanded to work with a dangerous machine, with which he was not at all familiar, should have been fully and specifically instructed in the safest methods of doing this work. To put them to work without these instructions was negligence, and the jury, could well have concluded from the facts in evidence that plaintiff's crippled hand was the proximate result of such negligence."

Lest we be misunderstood, we desire to state that we do not contend that the facts in the case at bar are parallel with the facts in the case just quoted from. Nor do we hold as a matter of law that it was the duty of the defendant to instruct or warn the plaintiff, but what we do hold is that the evidence is such that the question of defendant's negligence in that regard, as well as the question of contributory negligence on the part of the plaintiff, should have been submitted to the jury to pass on, and that the district court erred in deciding those questions as questions of law. We have therefore quoted from the last California case only for the purpose of illustrating the general views of the courts.

The case of *Kaillen* v. *Northwestern Bedding Co.,* supra, is as nearly a parallel case to the one at bar as it well could be. In the first headnote, which correctly reflects the decision, it is said:

"Whether it was negligence on the part of defendant to put the plaintiff to work on a certain machine without informing him as to the dangers incident to operating it, or whether the plaintiff ought, in the exercise of ordinary prudence, to have fully understood these dangers without being told of them, was, under the evidence in this case, a question for the jury."

It is not necessary to pursue the subject further.

Defendant's counsel have referred us to the following cases which they contend support their contention that the district court was right in withdrawing the case from the jury, namely: *Mithen* v. *Jeffery,* 259 Ill. 372, 102 N. E. 778; *Der-*

*ringer* v. *Tatley,* 34 N. D. 43, 157 N. W. 811, L. R. A. 1917F, 187; and *Silvia* v. *Sagamore Mfg. Co.,* 177 Mass. 476, 59 N. E. 73. Without pausing to review those cases, it must suffice to say that in some aspects they are clearly distinguishable from the case at bar and from those cited above in support of plaintiff's contentions.

We remark, there is nothing in any of the cases referred to by counsel which emanate from this court which in any way is contrary to the doctrine laid down in the cases we have quoted from. As the latest expression of this court, we refer to *Stam* v. *Ogden Packing, etc., Co.,* 53 Utah 248, 177 Pac. 218.

In conclusion, we desire to add that counsel for both sides deserve our commendation in citing only such cases as they deemed actually supported their respective views. Usually counsel cite a large list of cases and place the burden upon us to examine all of them and determine which are and which are not in point. It should always be remembered by counsel that it is rare when two cases are precisely parallel. As a rule each case presents some feature not present in any other, and hence all that can be accomplished by the citation of cases is to illustrate the controlling principles. That may just as well be accomplished (and generally is more effectively done) by the citation of a few well-considered cases as by citing a large number of analogous ones.

For the reasons stated, the judgment is reversed, and the cause is remanded to the district court of Salt Lake county, with directions to grant a new trial and to proceed with the case in accordance with the views herein expressed. Plaintiff to recover costs on appeal.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.