GALAROWICZ v. WARD et al.

No. 7501. Decided April 25, 1951. (230 P. 2d 576.)

612

See 61 C. J. S., Motor Vehicles, Sec. 523. Attorneys as witnesses, 58 Am. Jur., Witnesses, Sec. 152; 118 A. L. R. 954.

*Mark S. Miner, Martin M. Larson,* and *Gordon I. Hyde,* all of Salt Lake City, for appellant.

*D. Ray Owen, Jr., Irwin Arnovitz, Alvin I. Smith,* Salt Lake City, for respondent.

CROCKETT, Justice.

This is an action for personal injuries to plaintiff and damages to his car.

On the afternoon of October 9, 1948, the plaintiff, John Galarowicz, had parked his car parallel to the curb and

facing east on the south side of Emerson Avenue in Salt Lake City and was removing merchandise from the north side of said car when the defendant's automobile came backing out of the driveway across the street and crashed into the plaintiff, causing injuries to himself and damage to his car. The plaintiff, who was a salesman for the Stanley Home Products, had just stopped in front of the residence there, determined his customer was home, and come out to get some merchandise. He came around his car, opened the door, and stepped on the running board to reach into the car and in so doing naturally turned his back to the street. At that time, the defendant, Robert Ward, had gotten into the defendant's car and without starting the motor let it roll backward out of the driveway; he later stated that as he attempted to stop his foot slipped off the brake pedal causing him to lose control of the car and to crash into the plaintiff.

The plaintiff recovered a judgment against Robert Ward; the jury returned a verdict of "no cause of action" as to his parents, John and Erma Ward, and the court granted a nonsuit as to the defendants Siegel and their various business organizations. From the adverse portions of the judgment, the plaintiff has appealed and defendant, Robert Ward, has cross-appealed as to judgment against him. All of the defendants named, except the Wards, are either members of the Siegel family or business enterprises owned and operated by them. Because of the way we have analyzed this case, they can all be referred to as the Siegels.

The essential questions on this appeal are:

1. Did the court properly grant a nonsuit as to the Siegels?

2. Did he properly instruct the jury as to whether Robert Ward was an agent of his parents?

3. Was certain conduct on the part of D. Ray Owen, Jr., counsel for the Wards, prejudicial to plaintiff's cause?

4. On the cross appeal of Robert Ward, was the plaintiff guilty of contributory negligence as a matter of law? We will discuss them in that order.

A nonsuit having been granted in their favor, we take all the evidence against the Siegels as true, and give the plaintiff the benefit of every favorable inference and intendment which fairly arises from such evidence. *Kitchen* v. *Kitchen*, 83 Utah 370, 28 P. 2d 180; *Groesbeck* v. *Lakeside Printing Company*, 55 Utah 335, 186 P. 103; *Maberto* v. *Wolfe*, 106 Cal. App. 202, 289 P. 218.

The theory upon which plaintiff made the Siegels parties defendant was that Robert Ward was either an agent of Siegels or else a sub-agent through his father who worked for them. Briefly, the evidence upon which plaintiff bases this contention is as follows: That Robert's father, John Ward, was an employee of Siegels in the Salt Lake Loan Office, one of their businesses; that on some occasions he had repossessed cars for them; that his other son, Blaine, had repaired some of said cars at the Ward home at the request of his father, and was in fact doing so on another car at the time of this occurrence; that the car in question had been repossessed for Siegels and John Ward had been driving it for several years with Siegels' dealers' plates on it. There is a sharp dispute about whether Siegels or John Ward owned the car, but without detailing the conflicting evidence regarding that matter, for the purpose of this analysis, let us assume that Siegels in fact owned it.

It is undisputed that Robert Ward had never been directly employed by any of the Siegel interests. He was a high school student and a minor; was employed part time in a grocery store and in fact was home for lunch from such employment on the day the accident occurred. There was some evidence that he moved the car from the driveway in response to his mother's request, although he and she both denied this and he said he had driven the car on his own

initiative and without the consent of anyone. Mrs. Galaro-wicz, who was with her husband making deliveries, testified that when they stopped across the street Robert was washing or polishing the car.

In plaintiff's brief, he refers to certain alleged statements by John and Erma Ward to the effect that either one or both of them had told Robert to wash the car and take it back to the company lot, (Stout Motor Sales, one of Siegel's businesses.) A careful check of the record shows that these statements were all either excluded or stricken from the record insofar as they applied to the Siegels. Some of these statements, if admissible, might have aided in establishing an agency relationship between the Siegels and Robert. No error is assigned or argued that they were improperly deleted or excluded so we are obliged to consider the record as it stands.

Without the benefit of those admissions, are the foregoing facts sufficient to make a jury question regarding Robert Ward being an agent for the Siegels? Except for the matter of ownership of the car by the Siegels, there is hardly a suspicion that Robert Ward may have been acting for Siegels in moving the car from the driveway. Plaintiff asks that we reconsider the rule as it now exists in this state, that ownership of an automobile by one person and use by another raises no presumption of agency. In this regard, his counsel review for us the cases developing the rule and solicit its abrogation. See *Ferguson* v. *Winter*, 46 Utah 321, 150 P. 299; *McFarlane* v. *Winters*, 47 Utah 598, 155 P. 437, L. R. A. 1916D, 618; *Ferguson* v. *Reynolds*, 52 Utah 583, 176 P. 267; and *Saltas* v. *Affleck*, 99 Utah 65, 102 P. 2d 493, for cases developing this rule. The principle has been considered even more recently, however, in the case of *Conklin* v. *Walsh*, 1948, 113 Utah 276, 193 P. 2d 437, 440.

In this latter case, Dr. Conklin sued Walsh for damages

to his automobile arising out of a collision between the Walsh car and the Conklin car, being driven by Mrs. Conklin. The trial court directed a verdict for the plaintiff and held that Mrs. Conklin was not the agent or servant of her husband and therefore her negligence was not imputable to him. The court said:

> "That there is no presumption of agency between husband and wife in the operation of an automobile merely because of the marriage relationship has been fully decided by this court in the case of *Fox* v. *Lavender*, 89 Utah 115, 56 P. 2d 1049 [1053], 109 A. L. R. 105."

The court then quotes from the *Fox* v. *Lavender* opinion, in part, as follows:

> " * * * The other line of authorities which hold that no presumption arises that the driver of the car is the agent of the owner where the owner is not present are found listed in Berry on Automobiles, supra, p. 1172 § 1359, Utah falls within this class, (citing cases). In this juridiction this is the case even though a member of the family is driving. * * * "

The court, in *Conklin* v. *Walsh*, then concluded:

> "The fact that in this case the wife was in the act of taking the daughter to her music lesson at the time * * * does not establish agency between herself and her husband who was the owner of the car. Since the record discloses no other evidence of such a relationship, the trial judge when he determined that Mrs. Conklin was negligent correctly held that her negligence was not imputable to him."

Thus, the rule is well established in this state both as to strangers and the perhaps closer case of family members. There was no error on the part of the trial court in granting the nonsuit as to the Siegels.

This review as it relates to John and Erma Ward, parents of Robert, centers around the giving of instruction no. 9, which is as follows: "You are instructed that liability cannot be imposed upon John M. Ward merely because of his ownership of the car, but that a relationship of principal and agent, master and servant between father and son must first be established to your satisfaction by a preponderance of the evidence."

The objection is that the court failed to instruct the jury on the definition of "principal and agent" and "master and servant" relationships and that the instruction was too general.

The plaintiff did not submit any requested instructions further defining these terms. In the absence of his having done so, he cannot be heard to complain of the instruction given in general terms, *Griffiths* v. *Clift*, 4 Utah 462, 11 P. 609; *Thackery* v. *Union Portland Cement Co.*, 64 Utah 437, 231 P. 2d 813; *Pittman* v. *Sather*, 68 Idaho 29, 188 P. 2d 600. Instructions nos. 8, 9, 10 and 11 deal with this phase of the case, and when considered together, explain with sufficient clarity the nature of the relationship necessary to assess liability against either John or Erma Ward. The jury was told in substance that in order for plaintiff to recover against John or Erma Ward, it was necessary that they find that Robert moved the automobile at the direction of one of them, or was performing a service for one of them. The instructions must be considered all together, *Barlow* v. *Salt Lake & U. R. Co.*, 57 Utah 312, 194 P. 665; *Falkenberg* v. *Neff*, 72 Utah 258, 269 P. 1008. If they are so considered, the subject was adequately covered and the plaintiff was not prejudiced by the giving of instruction no. 9.

Finally, it is claimed by the plaintiff that his cause was seriously prejudiced by certain conduct of D. Ray Owen, Jr., counsel for the Wards. The best approach to appraising this contention is to set out what happened.

During the examination of Ray Parks, a witness for plaintiff, it appeared that Mr. Mark Miner, one of plaintiff's counsel, had been present with Parks in investigating the accident on the evening of its occurrence; they had talked to defendant, John Ward, and the latter made an admission against his interest. When it appeared from the testimony that Mr. Miner had been present, Mr. Owen addressed the court:

"Mr. Owen: May it please the Court, if there was present at the time of this alleged admission, Mr. Miner, as his attorney, if he was there at the time of that admission, we ask Mr. Miner be disqualified from any further participation in this case. He may be used as a witness but not continue as an attorney.

"Mr. Larson: The rule provides he may not argue this part of the testimony, that is all there is."

After brief discussion, the court properly denied Mr. Owen's motion. At the conclusion of Park's testimony, Mr. Owen stated:

"Mr. Owen: May it please the Court at this time, I think it is only proper that Mr. Miner be present throughout this trial so we may use him as our witness.

"Mr. Miner: I will be here all through the trial, you bet I will."

There was obviously no justification for this ill-advised remark by Mr. Owen.

The above happened on Friday, and Monday morning Mr. Owen called Mr. Miner as a defense witness. After Mr. Owen had examined another witness on direct, Mr. Miner started to cross-examine the witness when Mr. Owen addressed the court:

"Mr. Owen: Your Honor, I made objection to Mr. Miner having any other part in this case, I think that objection is well founded. That is in the nineteenth Canon of Ethics * * *. It says an attorney should withdraw from any further participation if he thinks he is going to be a witness."

One of plaintiff's counsel, Martin M. Larson, took timely and proper exception to Mr. Owen's conduct as being improper and cited Mr. Owen's actions as "unprofessional, undignified, and unworthy of any member of the bar." The court denied Mr. Owen's motion and admonished the jury:

"Gentlemen of the Jury, you are admonished you are not to allow this discussion of Mr. Miner's part in the case to influence you one way or the other in the case * * * it is entirely apart from the facts in the case, and you are therefore to disregard it."

The 19th Section of *The Canons of Ethics* to which Mr. Owen referred states: "When a lawyer is a witness for his client except as to merely formal matters, such as the

attestation or custody of an instrument and the like, he should leave the trial of the case to another counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client." This *Canon of Ethics* needs no elaboration to be applied to the facts here. Apparently, the object of this precept is to avoid putting a lawyer in the obviously embarrassing predicament of testifying and then having to argue the credibility and effect of his own testimony. It was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel. Neither was its purpose to prevent industrious counsel from investigating causes entrusted to him. There surely should be no great harm in a lawyer knowing something about the subject matter of his law-suit or concerning which he is questioning a witness.

We do not condone Mr. Owen's actions in what appears to have been an attempt to prevent Mr. Miner from trying plaintiff's case. Some allowances should be made for occurrences under the stress and strain of a jury trial where counsel is preoccupied with numerous matters and anxious to win his cause. It was particularly culpable of Mr. Owen to persist in this line of conduct after the week-end had passed which allowed sufficient time to consider the matter. It seems hardly credible that he could have misconstrued the *Canon of Ethics* referred to. However, the situation seems to have been kept in balance by opposing counsel and was well taken care of by the trial court. After a careful review of the whole affair, the way it was handled, the evidence in the case and the verdicts which were rendered, we are not convinced that prejudice to plaintiff's case actually resulted from the conduct about which he complains.

The cross-appeal of defendant Robert Ward is grounded on the theory that plaintiff was negligent as a matter of

law, and thus not entitled to a recovery. He predicated this contention upon the principles announced by this court in the cases of *Mingus* v. *Olsson,* 114 Utah, 505 ■ 1949, 201 P. 2d 495; *Hickok* v. *Skinner,* 1948, 113 Utah 1, 190 P. 2d 514; and *Reid* v. *Owens,* 98 Utah 50, 93 P. 2d 680, 126 A. L. R. 55. The fact situation here involved is so clearly distinguishable from any of those cases as to require no further comment thereon. There would be no reason under the facts of the present case for the plaintiff to anticipate that a car backing out of a driveway across the street would negligently back completely across the street and cause such a collision to occur, even assuming that he observed the Ward vehicle moving out of the driveway. The evidence here would not support a ruling that plaintiff was guilty of negligence as a matter of law. The judgment is affirmed; costs are awarded to the respondents, Siegels. Other parties to bear their own costs.

WOLFE, C. J., and WADE, LATIMER, and McDONOUGH, JJ., concur.