604 P.2d 1161

Henry GONZALES and Hortensia Gonzales, husband and wife, Plaintiffs/Appellants,

v.

The CITY OF TUCSON, a municipal corporation; Carl Lewis and Benita Lewis, husband and wife; Francisco Vasquez and Irma Vasquez, husband and wife; and Jeri Carter, Defendants/Appellees.

No. 2 CA–CIV 3264.

Court of Appeals of Arizona, Division 2.

Nov. 27, 1979.

Rehearing Denied Dec. 26, 1979.

Review Denied Jan. 8, 1980.

Robert S. Wolkin, Tucson, for plaintiffs/appellants.

Chandler, Tullar, Udall & Redhair by D. B. Udall, Tucson, for defendants/appellees.

## OPINION

HOWARD, Judge.

This was a suit for personal injuries from a gunshot wound inflicted by a City of Tucson policeman. The jury returned a defense verdict.

In the early morning hours of December 30, 1976, Henry Gonzales, who was in an intoxicated condition, decided to clean his pistol. When Mr. Gonzales accidentally shot himself, his wife and child called for assistance from the police who put out a call that there was a person inside the residence who had shot himself. Responding to the call were Officers Carl Lewis, Francisco Vasquez and Jeri Carter. When they arrived at the residence Mr. Gonzales' wife and child were outside. However, the officers did not speak with them and entered the house where they encountered Mr. Gonzales in the living area. He had a pistol in his possession and was pointing it at one of the officers or in the officers' direction. Officers Lewis and Vasquez told Mr. Gonzales to put the weapon down. Mr. Gonzales did not comply but instead went down the hall. Officer Vasquez had, in the meantime, drawn his weapon and was pointing it at Mr. Gonzales. He could see him go down the hall. Officer Lewis, however, could not see Mr. Gonzales and apparently thinking

that Mr. Gonzales was about to shoot Officer Vasquez, fired through the wall, hitting and seriously injuring Mr. Gonzales.

Pursuant to the "Police Department Rules and Procedures Manual" a special board of inquiry was designated by the Tucson Chief of Police. Rule 5.15 of the department rules states:

"A Special Board of Inquiry as designated by the Chief of Police shall review the circumstances surrounding each discharge of firearms . . . by a member of the Department or the unauthorized use of a service weapon by an officer or any other person. The Board shall submit a written report to the Chief of Police with their conclusions and recommendations. The Chief shall make the decision as to whether disciplinary action is to be taken against the officer involved."

The board of inquiry appointed by the chief of police made a written report which included, inter alia, the following conclusions:

"3. That all three officers used poor procedure by entering the residence without knocking or identifying theirselves [sic] verbally and by not having prior information on who all might be inside and what the surrounding circumstances were.

\*   \*   \*   \*   \*   \*

5. That Officer Lewis fired two rounds through the wall, violating Rules and Procedures 1/5.00, without knowing who all or what was on the other side of the wall.

\*   \*   \*   \*   \*   \*

The Board believes that at the point of initial contact by the officers with Mr. Gonzales when he was threatening them they were in jeopardy, but after Mr. Gonzales backed down the hall out of the officer's immediate vision, the degree of jeopardy was reduced at that time, and the officers had the opportunity to explore other means for disarming Mr. Gonzales. The Board does not feel that lives were in immediate and certain danger when Lewis fired through the wall. We feel that shooting blindly through a wall could have had disastrous results."

The board recommended that Officer Lewis be given a three-day suspension for violation of the rules and procedures by firing blindly through a wall apparently without regard to the possible consequences to others who might have been in the rooms. The Chief of Police, William Gilkinson, wrote the following on the report of the board of inquiry: "I concur with the findings of the Board." Officer Lewis was suspended.

■■■ Appellants urged below and contend now that the results and recommendations of the Board of Review were admissible as admissions of a party opponent. Even assuming, without deciding, that the statements were admissible, they would have been admissible only against the city. *Bristol v. Moser*, 55 Ariz. 185, 191, 99 P.2d 706, 709 (1940).[1] The city's liability was based upon the doctrine of respondeat superior and there was no independent theory of negligence against the city. Where both the master and the servant are joined as defendants and the claim against the master is based solely upon the doctrine of respondeat superior, a verdict against the master and exonerating the servant is inconsistent and cannot stand. *Miracle Mile Bottling Distributing Co. v. Drake*, 12 Ariz. App. 439, 471 P.2d 741 (1970); *Eckleberry v. Kaiser Foundation Northern Hospitals*, 226 Or. 616, 359 P.2d 1090 (1961); *Altman v. Sanders*, 267 N.C. 158, 148 S.E.2d 21 (1966); 57 C.J.S. Master and Servant § 619(b), at 421 (1948). Since the jury found in favor of the individual police officers, appellants could not have been prejudiced by the failure to admit the evidence.

1. On the issue of admissibility see *Arizona State Highway Department v. Bechtold*, 105 Ariz. 125, 460 P.2d 179 (1969), and cases cited in Wigmore on Evidence, vol. 4, Sec. 1078, at 174–76, footnote 4 (Chadbourn rev. 1972). But has Rule 801(d)(2)(C), Arizona Rules of Evidence changed *Bechtold*? See Wigmore, Sec. 1078 at 176 and *Kingsley v. Baker/Beech-Nut Corporation*, 546 F.2d 1136 (5th Cir. 1977).

■ Appellants contend the trial court erred when it allowed the defendants, after the close of the evidence, to amend their pleadings to allege contributory negligence as a defense. We do not agree. The pretrial statement stated that appellees were contending Gonzales was negligent. All the facts bearing on his negligence would have been adduced in any event. Appellants were not prejudiced in the maintenance of their action on the merits and allowing the amendment subserved the presentation of the case on its merits. Rule 15(b), Arizona Rules of Civil Procedure, 16 A.R.S.

■ On cross-examination appellants sought to elicit from Officer Lewis the fact that he had been suspended for his actions and had lost pay for the period of suspension. The purpose of this line of questioning was to show that Officer Lewis was biased and prejudiced against appellants because he had lost pay as a result of this incident. It is always proper to inquire concerning the motive of an adverse witness in testifying and to show any matter which bears upon the credibility of the witness. *State v. Rothe*, 74 Ariz. 382, 249 P.2d 946 (1952). Assuming arguendo that the trial court erred in refusing to allow appellants to pursue this line of questioning, we perceive no prejudicial error. Lewis was a defendant, and possibly subject to any adverse verdict, therefore his interest in the outcome of the case was obvious.

Appellants contend the trial court erred in failing to give certain jury instructions which they offered. Since the record contains no objection to the failure to give these instructions, appellants are precluded from asserting any error. Rule 51(a), Arizona Rules of Civil Procedure, 16 A.R.S.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.