624 P.2d 296

COTTONWOOD ESTATES, INC., an Arizona corporation, and Mountain View Terrace, Inc., an Arizona Corporation, Petitioners,

v.

PARADISE BUILDERS, INC., an Arizona corporation, and the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondents.

No. 15155.

Supreme Court of Arizona, En Banc.

Feb. 4, 1981.

Rubin, Rubin & Cronin by Michael L. Rubin and Lawrence E. Wilks, Phoenix, for petitioners.

Robert C. Whitten, Phoenix, for respondents.

HAYS, Justice.

We accepted jurisdiction of this petition for special action to decide whether the trial court abused its discretion by ruling that petitioners' attorney could not try this matter and testify as a witness in the same proceeding. Ariz.Const. art. 6, § 5(4) and 17A A.R.S. Rules of Procedure for Special Actions, rule 3(c).

Seymour and Lester Stein, of Chicago, sought to develop a particular six-acre parcel of land through two Arizona corporations, petitioners' Cottonwood Estates and Mountain View Terrace. The Steins were the principal shareholders of the corporation which employed Phoenix attorney, Michael L. Rubin, as counsel. From March 1979 through February 1980, Rubin also served as Cottonwood's assistant vice-president and assistant secretary.

Cottonwood contracted with respondent, Paradise Builders, Inc., to construct 25 single-family residences on the six-acre parcel while Mountain View contracted with Paradise Builders to construct multiple-family residences on the same parcel. In the underlying cause of action herein, Paradise Builders contends Mountain View almost immediately breached its contract while Cottonwood breached after Paradise Builders completed 13 of the 25 residences. Paradise Builders filed a breach of contract action in Maricopa County Superior Court to recover overhead expenses and lost profits from both Cottonwood and Mountain View, as well as to recover direct costs of construction from Cottonwood.

Paradise Builders obtained a partial summary judgment in the amount of $81,000 against Cottonwood for the latter's failure to pay the direct costs. In addition, Paradise Builders obtained a $7,000 judgment against Cottonwood in a collateral matter.[1]

Two days before Paradise Builders obtained its judgment in the collateral matter, Rubin, as an officer of Cottonwood, executed deeds transferring the twelve lots without residences plus one with a model to Camelback Development Company, another Arizona corporation owned by Seymour and Lester Stein.[2] In subsequent proceedings Paradise Builders argued that the transfer was without consideration, therefore a fraudulent conveyance designed to remove the property from the reach of the judgments.

A garnishment proceeding was initiated against Camelback based on the partial summary judgment granted in the contract action and on the judgment rendered in the collateral proceeding. The garnishment proceeding was founded on the fraudulent conveyance from Cottonwood to Camelback. Cottonwood filed a counterclaim in the garnishment action supported by an affidavit verified as true by Rubin.

---

1. *Letco, Inc. v. Paradise Builders, Inc.*, Maricopa County Super.Ct., No. C–391816 (Judgment filed October 4, 1980). Judgment in this cause was rendered in favor of Paradise Builders as third-party plaintiff against Cottonwood as third-party defendant.

2. The petition for special action indicates twelve lots were transferred. The response to the petition indicated that 13 lots were transferred, which is supported by deposition testimony of Rubin as well as the quitclaim deed from Cottonwood to Camelback.

Following numerous requests for continuances and several trips to the bankruptcy court, a jury trial of the contract action was set for November 4, 1980, with trial on the garnishment action immediately to follow.

At pretrial arguments held the day trial was to begin, Paradise Builders informed the trial judge that it would call Rubin as a witness. The court was also presented with a letter written by respondent's attorney six months previously, informing Rubin that he would be called to testify at trial. Rubin was to be called because he had been a witness in discovery and at pretrial proceedings;[3] because he was an officer of Cottonwood at relevant times; because, as an officer, he transferred all of Cottonwood's assets; and as an officer he had, or should have had, personal knowledge of Cottonwood's liabilities and assets relevant to the allegedly fraudulent conveyance.

The trial judge, upon learning that Rubin would be a witness, ruled *sua sponte* that he not be allowed to represent Cottonwood at the trial of either the contract action or the garnishment proceedings. This special action and a stay of proceedings below followed.

■ The question before us is in two dimensions: one in evidence, the other in ethics.[4] The law of evidence provides that as a basic premise the admission of testimony falls within the sound discretion of the trial judge. *Rimondi v. Briggs*, 124 Ariz. 561, 606 P.2d 412 (1980). It is the trial judge who decides if otherwise relevant evidence should not be admitted because of its prejudicial effect. Ariz.R.Evid. 403. The law of evidence reveals no disability on the part of an attorney as to testifying in a proceeding in which he is also an advocate.[5] The attorney may be disqualified not because his testimony is incompetent but because of the dangers and prejudice inherent in the practice. *See French v. Hall*, 119 U.S. 152, 7 S.Ct. 170, 30 L.Ed. 375 (1886); *Erwin M. Jennings Co. v. DiGenova*, 107 Conn. 491, 141 A. 866 (1928).

■ In *Hales v. Pittman*, 118 Ariz. 305, 313, 576 P.2d 493, 501 (1978), we observed that "[a] fundamental rule of the American system of jurisprudence prohibits an attorney from testifying in a case he is handling." A review of cases from other jurisdictions reveals that courts normally refuse to condone the practice of acting both as advocate and witness in the same proceeding. *See, e. g., French v. Hall, supra; Miller v. Urban*, 123 Conn. 331, 195 A. 193 (1937); *Bris Realty Co. v. Phoenix Savings & Loan Assn.*, 238 Md. 84, 208 A.2d 68 (1965); *Edmiston v. Wilson*, 146 W.Va. 511, 120 S.E.2d 491 (1961). Even though the attorney is otherwise competent to testify, it is generally considered a serious breach of professional etiquette and detrimental to the orderly administration of justice for an attorney to take the stand in a case he is trying. *See Bank of America v. Saville*, 416 F.2d 265 (7th Cir. 1969), *cert. denied*, 396 U.S. 1038, 90 S.Ct. 685, 24 L.Ed.2d 682 (1970); *Lau Ah Yew v. Dulles*, 257 F.2d 744 (9th Cir. 1958); *Kaeser v. Bloomer*, 85 Conn. 209, 82 A. 112 (1912); *Edmiston v. Wilson, supra*.

■ The attorney who testifies diminishes his effectiveness as advocate as well as his effectiveness as a witness. *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.*, 546 F.2d 530 (3d Cir. 1976), *cert. denied sub nom., Super Athletics Corp. v. Universal Athletic Sales Co.*, 430 U.S. 984, 97 S.Ct.

---

**3.** In order to prevent further transfers of Cottonwood's assets, Paradise Builders sought an injunction. At those proceedings Rubin testified as the person responsible for making the conveyance.

**4.** While in a criminal proceeding there are similar considerations militating against an attorney testifying in a trial he is conducting, there are additional considerations which we are not required to weigh here. *See, e. g., United*

*States v. Cerone*, 452 F.2d 274 (7th Cir. 1971), *cert. denied*, 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972); *United States v. Vereen*, 429 F.2d 713 (D.C.Cir.1970); *State v. Caldwell*, 117 Ariz. 464, 573 P.2d 864 (1977).

**5.** *But cf.* Ariz.R.Evid. 605 (disqualifying a judge from presiding and testifying in the same proceeding); Ariz.R.Evid. 606 (disqualifying juror from testifying at trial in which he is sitting).

1681, 52 L.Ed.2d 378 (1977); *Lau Ah Yew v. Dulles, supra.* Like any witness, the attorney is subject to cross-examination on any relevant matter, Ariz.R.Evid. 611, including the professional and financial interest in the outcome of the litigation, *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp., supra,* and impeachment by the usual methods of demonstrating bias or prejudice. *Gonzales v. City of Tucson,* 124 Ariz. 450, 604 P.2d 1161 (App.1979); Ariz.R.Evid. 607.

When an attorney persists in acting both as witness and advocate, ordinary procedural safeguards designed to give the parties a full and fair hearing become problematic. For example, the familiar mechanics of question-and-answer interrogation become impossible. The rule excluding witnesses from the courtroom may be invoked, yet the advocate-witness obviously must be allowed to remain. The advocate who testifies places himself in the position of being able to argue his own credibility. This special witness can take the stand, objectively state the facts from personal knowledge, then press home those facts by argument to the jury. Our belief is that an adversary system works best when the roles of the judge, of the attorneys, and of the witnesses are clearly defined. Any mixing of those roles inevitably diminishes the effectiveness of the entire system. *Inglett & Co. v. Everglades Fertilizer Co.,* 255 F.2d 342 (5th Cir. 1958). The practice not only raises the appearance of impropriety, *Alexander v. Watson,* 128 F.2d 627 (4th Cir. 1942); *Erwin M. Jennings Co. v. DiGenova, supra,* but also disrupts the normal balance of judicial machinery.

■ The *ABA Code of Professional Responsibility* establishes aspirational guidelines in the form of Ethical Considerations which reflect the concerns heretofore expressed. Those aspirational guidelines include:

> *Ethical Consideration 5–9.* Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

> *Ethical Consideration 5–10.* Problems incident to the lawyer-witness relationship arise at different stages; they relate either to whether a lawyer should accept employment or should withdraw from employment. Regardless of when the problem arises, his decision is to be governed by the same basic considerations. It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue. In the exceptional situation where it will be manifestly unfair to the client for the lawyer to refuse employment or to withdraw when he will likely be a witness on a contested issue, he may serve as advocate even though he may be a witness. In making such decision, he should determine the personal or financial sacrifice of the client that may result from his refusal of employment or withdrawal therefrom, the materiality of his testimony, and the effectiveness of his representation in view of his personal involvement. In weighing these factors, it should be clear that refusal or withdrawal will impose an unreasonable hardship upon the client before the lawyer accepts or continues the employment. Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate. (footnotes omitted).

If it becomes clear an attorney ought to testify, *J. P. Foley & Co. v. Vanderbilt*, 523 F.2d 1357 (2d Cir. 1975); *Smith v. Arc-Mation, Inc.*, 402 Mich. 115, 261 N.W.2d 713 (1978), and if the situation in justice to his client permits, an attorney should withdraw and leave the trial to other counsel.

■ Our Disciplinary Rules, 17A A.R.S., Rules of the Supreme Court, rule 29(a) [hereinafter cited as Disciplinary Rules or DR] provide additional assistance. Where an attorney will be called to testify, the Disciplinary Rules require withdrawal in all but a few carefully delineated situations:

DR 5–102 Withdrawal as Counsel when the Lawyer Becomes a Witness.

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

DR 5–101 Refusing Employment when the Interests of the Lawyer May Impair His Independent Professional Judgment.

. . . . .

(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment, and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

If testimony falls within the exceptions of DR 5–101(B)(1)–(4), an attorney who would be called on behalf of his client need not withdraw. The Disciplinary Rule recognizes the exceptions found in the case law where the courts generally declined to announce an absolute ban on attorneys testifying on behalf of their clients. The practice may be allowed where the interests of justice require it, *see e. g., Walker v. Bailey*, 245 F.2d 486, 44 CCPA 998 (1957); *Norris v. Bristow*, 358 Mo. 1177, 219 S.W.2d 367 (1949); where no prejudice, danger or harm exists, as in uncontested matters, *see, e. g., Robbins v. Hannen*, 194 Kan. 596, 400 P.2d 733 (1965); *Branom v. Smith Frozen Foods of Idaho, Inc.*, 83 Idaho 502, 365 P.2d 958 (1961); and to avoid burdening the client with substantial hardship, *see, e. g., Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp., supra; J. P. Foley & Co. v. Vanderbilt, supra.*

Disciplinary Rule 5–102(B) contains no exceptions when an attorney will be called other than on behalf of his client and it appears the testimony is or may be prejudicial to his client:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it may be obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

■ The prejudice requirement of DR 5–102(B) works to preclude the folly of an attorney giving testimony detrimental to the interest he is advocating as well as to

prevent opposing counsel from contriving some tactical need for calling the attorney thereby triggering disqualification. *See Smith v. Arc-Mation, supra.* To call for the disqualification of opposing counsel for delay or other tactical reasons, in the absence of prejudice to either side, is a practice which will not be tolerated. *Phillips v. Liberty Mutual Insurance Co.*, 43 Del.Ch. 436, 235 A.2d 835 (1967); *Galarowicz v. Ward,* 119 Utah 611, 230 P.2d 576 (1951).

■ By misusing the advocate-witness prohibition, an attorney might elbow opposing counsel out of the litigation for tactical reasons. *International Electronics Corp. v. Flanzer,* 527 F.2d 1288 (2d Cir. 1975); *J. P. Foley & Co. v. Vanderbilt,* 523 F.2d at 1360 (Guerin, J. conc.). When an attorney is to be called other than on behalf of his client, a motion for disqualification must be supported by a showing that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and that the testimony is or may be prejudicial to the testifying attorney's client.

■ We would like to believe an attorney who recognizes that he ought to be called as a witness would withdraw out of respect for the profession of which he is a member and the court of which he is an officer rather than out of the fear of discipline. In any event, when the court is faced with an attorney who refuses to withdraw and insists on taking the stand, the court may in its discretion disallow the testimony, disqualify the attorney, or impose any other procedural safeguards necessary to preserve the integrity of the fact finding process. If the court finds the unethical considerations raised by such testimony constitute prejudice great enough to outweigh the probative value of otherwise relevant evidence, the testimony may be disallowed. Ariz.R.Evid. 403. Where the evidence is material, necessary for the just determination of the issues, and unavailable from other sources, the court may order an attor-

ney's disqualification. *Comden v. Superior Court,* 20 Cal.3d 906, 576 P.2d 971, 145 Cal. Rptr. 9 (1978).

■ In light of the foregoing principles, we feel the trial judge did not abuse her discretion in requiring that Rubin not be allowed to try this case because he would also testify. In the garnishment action, Rubin would be called to testify concerning his actions as an officer of Cottonwood. In that capacity Rubin transferred certain of the corporation's assets. What he did as officer and why he did it are both material to the determination of this action and not privileged since Rubin acted as an officer of Cottonwood rather than as its attorney. While the materiality of Rubin's testimony in the breach of contract action is less certain, he was an officer or agent at relevant times, he had been deposed twice concerning his role as officer, and he testified at pretrial proceedings.

Cottonwood contends Rubin's testimony would be uncontested, not prejudicial to his clients, and in any event the clients consented to the testimony. The clients' consent notwithstanding, *see Kesselhaut v. United States,* 555 F.2d 791 (Ct.Cl.1977), we do not see how testimony from an officer of a company being sued for breach of contract can be anything but material and in this case prejudicial. Even if Rubin believes his testimony will be uncontested, it is quite clear he will be impeached. As a result of the impeachment, the fact finder need not believe Rubin had no knowledge of the property's value, or if consideration passed, or whether he acted independently as an officer of the corporation rather than at the discretion of Seymour and Lester Stein. The evidence was material, the testimony contested, and the witness subject to impeachment. Moreover, Rubin had adequate advance notice of his impending testimony. The court in its discretion properly ordered his disqualification.

■ As an aside, we also note Rubin placed himself in the position of being both

an officer and attorney for the corporation. We are aware that this practice is not uncommon among lawyers but this case demonstrates that such action is fraught with danger. A lawyer owes his client a duty of loyalty and the duty to exercise independent professional judgment. A lawyer representing a corporation has a duty of loyalty to the corporate entity which may or may not be coexistent with any duty owed the board of directors or officers. Here, the lawyer is being called into court to answer for his acts as an officer where his corporate ministerial duties conflicted with his professional duty to exercise independent judgment on behalf of his client.

Relief denied.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and GORDON, J., concur.

*Note*: Justice James Duke Cameron did not participate in the determination of this matter.