**Steven MUNN and Jeannie Munn, Appellants,**

**v.**

**BRISTOL BAY HOUSING AUTHORITY and Keith Nannery, Appellees.**

**No. S–2623.**

Supreme Court of Alaska.

June 30, 1989.

Sandra K. Saville, Kay, Saville, Coffey, Hopwood & Schmid, Anchorage, for appellants.

James F. Vollintine, Vollintine & Carey, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

Steven and Jeannie Munn appeal an order of summary judgment dismissing all their claims against Bristol Bay Housing Authority ("BBHA") and Keith Nannery, a housing inspector for BBHA. The Munns also appeal the superior court's orders preventing them from taking certain depositions and denying their motion to disqualify BBHA and Nannery's attorney, James F. Vollintine. Finally, the Munns appeal the superior court's award of attorney's fees to BBHA and Nannery.

## I. FACTS.

*Steven Munn.*

In January of 1985, Steven Munn was hired by Kanag'iq, Inc. as field superintendent for Kanag'iq's construction of a housing project in the Village of New Stuyahok. The housing units were being built on land owned by BBHA.

In May of 1985, building materials for the project were unloaded at a dock located about one-quarter of a mile from the con-

struction site. During the next three months, a series of problems caused friction between Steven Munn and Keith Nannery, whose job it was to make sure that Kanag'iq complied with the terms of its contract with BBHA.

Transportation of the building materials from the dock to the construction site was delayed because a road from the dock area to the construction site had not yet been completed. The road was then defectively built, causing further delays.

According to Munn, after the actual housing construction began, Nannery delayed work without justification, thereby idling Munn's work crew from time to time. Nannery, Munn alleged, gave conflicting and incomprehensible work orders and unreasonably withheld approval of Kanag'iq's work.

BBHA and Nannery similarly attack Munn's performance. BBHA's Project Director Kenneth Law, Executive Director Judy Wallace, and Nannery all state in their affidavits that "Munn placed some houses on their foundations facing in the wrong direction; he improperly installed the vinyl floor covering in some houses; he put windows in the wrong places; he buried foundation eyebolts without proper galvanization and protection from rust; and he pilfered BBHA's private gravel stockpile for Kanag'iq."

The conflict between Munn and Nannery culminated on August 7, 1985, when, according to Munn, Nannery unreasonably refused to give permission to continue work. Following a discussion in Nannery's office, Munn states that Nannery followed him down the hall and "bellied up" to him, thereby knocking off Munn's baseball cap. Munn, believing Nannery was being antagonistic, "took him by the front of his shirt, put him back at an arm's length.... [and] said, 'Don't ever belly up to me again.... [or] I'm going to knock you on your ass.'" Nannery departed after the two men stared at each other for what "seemed like 100 years."

According to Nannery, Munn began "acting in an aggressive, threatening manner" during their discussion in Nannery's office.

After Munn left Nannery's office, Nannery followed him to explain BBHA's concerns with Kanag'iq's work. "As [Munn] entered his [own] office, he turned and bumped his body into me and thrust me away from him with considerable force with his hands and arms. He shouted at me to inspect the insulation and slammed the door in my face."

On August 7, 1985, Kenneth Law called Kanag'iq and demanded that Munn be taken off the job; Kanag'iq refused.

On August 9, BBHA and Nannery filed a complaint in superior court alleging that Munn had assaulted Nannery and had interfered with the BBHA–Kanag'iq construction contract. On the same day the superior court issued a temporary restraining order enjoining Munn "from assaulting, battering, harassing, intimidating, or physically or verbally abusing the Plaintiff Keith Nannery or interfering with his duties as housing inspector for [BBHA]."

Munn flew to Anchorage on August 9 to discuss the effect of the temporary restraining order on his ability to continue his job in New Stuyahok. Kanag'iq's attorney, who was also representing Munn at the time, advised Munn that the scope of the order would prevent effective interaction with Nannery, and that he should not return to the job site.

After August 9 Munn took a lower paying position with Kanag'iq at their Anchorage office. This position entailed "putting together a claims package [against BBHA] for the cost overruns." Munn never returned to the New Stuyahok project.

Nannery and BBHA dismissed their action against Munn on August 14, five days after it was filed.

*Jeannie Munn.*

Jeannie Munn worked for Kanag'iq during the New Stuyahok construction project as a camp cook. She took the job to be with her husband, Steven Munn, and earned $16.83 per hour for a seventy-hour work week. Jeannie travelled to Anchorage with Steven in August and never returned to New Stuyahok. She admits that

she could have returned to her job, but states that she did not want to go back to New Stuyahok without her husband.

## II. PROCEEDINGS.

The Munns filed a complaint against BBHA and Nannery on June 11, 1986, and amended it on July 6, 1987. They alleged that BBHA and Nannery: 1) intentionally or negligently interfered with their employment relationships with Kanag'iq; 2) abused process by filing the earlier assault suit to make it difficult or impossible for them to continue their jobs at New Stuyahok; 3) intentionally or negligently inflicted emotional distress upon them; 4) intentionally interfered with Steven's prospective employment relations; and 5) defamed him, severely injuring his professional reputation. They sought both compensatory and punitive damages.

On October 24, 1986, the Munns requested that BBHA produce, at the Anchorage office of the Munns' attorney, copies of a large number of documents relating to the Munns' work performance and the New Stuyahok project. BBHA's counsel notified the Munns' attorney that production of the documents in Anchorage was unreasonably burdensome, but that they could be inspected and copied at BBHA's Dillingham office. In December 1986, the Munns filed a motion to compel production, and BBHA filed an opposition. On February 5, 1987, the superior court ordered that the documents be inspected by the Munns' counsel in Dillingham, but that BBHA pay for roundtrip airfare between Anchorage and Dillingham. The documents were inspected on February 23, forwarded to the Munns for their review, copied, and returned to the Munns' attorney on March 28.

On March 9, 1987, BBHA and Nannery moved for summary judgment. The Munns responded on March 31,[1] requesting that the superior court stay the summary judgment motion pursuant to Alaska Rule of Civil Procedure ("Rule") 56(f) or, alternatively, enlarge the Munns' response time pursuant to Rules 1, 6(b), and 94. The

Munns argued that a stay or enlargement of time to respond was necessary because they had not yet completed discovery. In particular, the document production delay had effectively prevented taking depositions from certain BBHA officials until April or May.

At the same time, the Munns moved for leave to amend their complaint, and for Nannery and BBHA's attorney, James Vollintine, to be disqualified because "he will be an essential witness in the case." The Munns simultaneously noticed Vollintine and BBHA Executive Director Michael Shuler for depositions and obtained a subpoena to compel Vollintine to comply with his notice.

BBHA and Nannery opposed the Munns' March 31 motion and moved to quash the two notices of deposition and the subpoena directed against Vollintine. In their opposition memorandum, they stated:

> There is no justification to allow the plaintiffs to take the depositions of Mike Shuler, Judy Wallace, Keith Nannery, and Ken Law to prepare an opposition to the motion for summary judgment. Three of [the] four individuals reside in Washington and Arizona making the depositions expensive and time-consuming. Defendant Nannery and the three witnesses have already submitted affidavits. The plaintiffs do not have a right to depose them. This is a summary judgment motion, not a trial.

On July 6, the superior court granted the Munns' motion to amend their complaint and denied their motions to disqualify Vollintine and to stay the summary judgment motion. The court also quashed the Vollintine and Shuler deposition notices and the Vollintine subpoena and ordered that the Munns file their opposition to the motion for summary judgment within ten days. They then filed their opposition. The court granted summary judgment in favor of BBHA and Nannery on August 31, 1987. Final judgment was entered, and this appeal followed.

---

1. The parties stipulated to extend the time in which to respond until March 31.

### III. WAS THE MUNNS' COMPLAINT BARRED BY LACHES?

The superior court held that the equitable doctrine of laches barred the Munns' complaint. The court stated:

> The plaintiffs delayed in filing suit and defendants were extremely prejudiced by the delay. The plaintiffs.... waited until six months after the construction project was completed before filing suit. In the meantime, BBHA's senior employees, Judy Wallace, Kenneth Law and Keith Nannery left BBHA's employment and now reside in Washington and Arizona. Other witnesses ... are scattered throughout Alaska and the lower 48. The court finds that it would be extremely difficult for BBHA and Nannery to defend against this lawsuit.

We have stated that "[t]he defense of laches is inapplicable to an action at law.... When a party is seeking to enforce a legal right, as opposed to invoking the discretionary equitable relief of the courts, the applicable statute of limitations should serve as the sole line of demarcation for the assertion of the right." *Kodiak Elec. Ass'n v. DeLaval Turbine, Inc.*, 694 P.2d 150, 157 (Alaska 1984) (footnote omitted). Since the Munns are suing BBHA and Nannery in tort, the doctrine of laches is clearly inapplicable.[2]

Moreover, even if the Munns had sought equitable relief, the superior court's laches ruling would have been erroneous. The ruling was predicated in part on the fact that the Munns waited some ten months after August 1985—when the earliest of their causes of action accrued—to file their complaint. The superior court found that this ten-month delay prejudiced BBHA and Nannery because witnesses left the New Stuyahok construction project during this time for residences located "throughout Alaska and the lower 48."

These facts simply do not furnish an adequate basis for the invocation of laches.

### IV. SHOULD THE SUPERIOR COURT, PURSUANT TO CIVIL RULE 56(f), HAVE POSTPONED ITS CONSIDERATION OF THE NANNERY/BBHA SUMMARY JUDGMENT MOTION UNTIL AFTER THE MUNNS WERE ABLE TO DEPOSE WALLACE, LAW, NANNERY, AND SHULER?

The Munns argue that the superior court erred in not granting them a continuance pursuant to Alaska Rule of Civil Procedure 56(f). A Rule 56(f) decision will be reversed only where a trial court has abused its discretion. *See Brock v. Weaver Bros.*, 640 P.2d 833, 836–37 (Alaska 1982).

Alaska Rule of Civil Procedure 56(f) provides:

> *Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated* present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(Emphasis added.)

The Munns' attorney filed a Rule 56(f) affidavit in conjunction with the motion to continue or stay the summary judgment motion. In her affidavit the Munns' counsel stated that she had not been able to depose Law, Nannery, Wallace and others because the documents she had requested in October of 1986 were just produced in March of 1987. Counsel further averred that she would need to organize and examine these documents in order to properly prepare for taking the depositions of those witnesses.

---

2. BBHA and Nannery argue that the superior court's laches ruling should be upheld because of the Munns' failure to challenge it in their opening brief. However, a party's failure to challenge an erroneous ruling on appeal will not prevent this court from reversing the ruling where it was "plain error." *See Matter of L.A.M.*, 727 P.2d 1057, 1059 (Alaska 1986).

"[P]lain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted." *Id.* (quoting *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981)). The superior court's ruling was obviously erroneous in light of our pronouncement in *DeLaval* that the defense of laches is inapplicable to actions at law. 694 P.2d at 157.

Nannery and BBHA argue that this affidavit "failed to give adequate reasons why affidavits creating a genuine issue of fact could not be filed" and posited only "vague assertions that additional discovery will produce needed, but unspecified facts." We reject this argument and hold that the affidavit does fairly explain why affidavits sufficient to oppose summary judgment could not be filed. The Munns' counsel believed that she needed to adequately prepare herself before incurring the expense of deposing out-of-state witnesses. Although her affidavit does not state with specificity what facts are sought to be proved by the depositions of the witnesses, Rule 56(f) does not require this much.

Professors Wright, Miller, and Kane, explaining the substantively identical federal rule, state that:

> [A] Rule 56(f) affidavit ... need not contain evidentiary facts going to the merits of the case; rather it is merely a sworn statement explaining why these facts cannot yet be presented.... Courts even have allowed parties with no clear idea of what specific facts they hope to obtain to overcome a summary judgment motion, at least temporarily.... [*Citing Booth v. Security Mut. Life Ins. Co.*, 155 F.Supp. 755 (D.N.J.1957), and *Toebelman v. Missouri–Kansas Pipe Line Co.*, 130 F.2d 1016 (3d Cir.1942).]
>
> . . . .
>
> The purpose of subdivision (f) is to provide an additional safeguard against an improvident or premature grant of summary judgment and the rule generally has been applied to achieve that objective.

10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2740 at 530–32 (2d ed. 1983) (footnotes omitted). They further note that while "a few courts" have required a party invoking Rule 56(f) to show what facts are sought through further discovery and "what steps have been taken to access them[,] ... these requirements have [generally] been imposed only when the court is skeptical about a genuine issue ever emerging, or when the party opposing summary judgment has been less than diligent in employing discovery." *Id.* § 2741, at 548–50 (footnotes omitted).

An interpretation of Civil Rule 56(f) requiring the opposing party to specify the evidence which will be uncovered through further discovery will in many cases work an unfair hardship. Therefore we see no compelling reason to interpret Rule 56(f) to require that non-moving opposing parties state what specific facts discovery will produce. It is sufficient that a party state in a Rule 56(f) affidavit adequate reasons why "he cannot [within the original time frame] ... present ... facts essential to justify his opposition" to the motion for summary judgment.

■ We must next determine whether the superior court abused its discretion in ordering summary judgment against the Munns before they were able to depose Nannery, Law, Wallace, and Shuler. In *Jennings v. State*, 566 P.2d 1304 (Alaska 1977), we noted that as long as a non-movant has not been dilatory and has "made clear to the trial court and the opposing party that he" is requesting a Rule 56(f) continuance, the request "should be freely granted." *Id.* at 1313–14.

Review of the record demonstrates that the Munns have not been dilatory in their discovery efforts. The answer to their original complaint was filed on September 8, 1986. On October 24, 1986, the Munns requested that BBHA produce various documents relating to their job performances and the New Stuyahok project. Through no fault of the Munns, the issue of which party would have to inspect and copy the documents was not settled until the superior court's February 5, 1987, order that the Munns were responsible for traveling to BBHA's Dillingham office for purposes of inspection and production. The documents were copied on February 23, received in the mail by the Munns' attorney on March 16, reviewed by the Munns, and re-delivered to their attorney's office on March 28. These facts do not demonstrate "dilatory" behavior. In light of the fact that ex-BBHA employees Wallace, Nannery, and Law all lived outside of Alaska, it was not unrea-

sonable for the Munns' attorney to delay the taking of their depositions until she could adequately prepare herself by first reviewing the produced documents.

Instead of filing an opposition to the motion for summary judgment, the Munns' counsel filed the aforementioned Civil Rule 56(f) affidavit and a motion for continuance so that the Nannery, Wallace, Law, and Shuler depositions could be taken. On or about March 31, Shuler had been served with the Munns' notice of the taking of his deposition. On April 10, BBHA and Nannery moved to quash the Shuler notice. Apparently the Munns made no further attempts to take the depositions of Law, Nannery, and Wallace prior to the superior court's July 6 denial of the Munns' motion for a stay. In our view, the failure to take the depositions of Law, Nannery, and Wallace during this time period does not demonstrate a lack of diligence on the Munns' part. It was not unreasonable for the Munns' to anticipate that the superior court would promptly rule both on their motion for a continuance and on BBHA and Nannery's motion to quash. *See Glen Eden Hospital v. Blue Cross & Blue Shield of Mich.*, 740 F.2d 423, 428 (6th Cir.1984) (failure to conduct discovery during period of interlocutory appeal not dilatory behavior under Rule 56(f)).[3] Therefore, we hold that the superior court abused its discretion in failing to grant the Munns the relief they sought under Rule 56(f)[4] and in quashing Shuler's deposition notice. The Munns should have been accorded a reasonable time within which to take the depositions of Nannery, Law, Shuler, Wallace, and other witnesses who may possess relevant evidence before being required to oppose the motion for summary judgment.

## V. WERE THE SUPERIOR COURT'S DECISIONS QUASHING THE DEPOSITION OF BBHA AND NANNERY'S ATTORNEY AND DENYING THE MUNNS' MOTION TO DISQUALIFY HIM ERRONEOUS?

The Munns argue that the superior court erred both in quashing their subpoena for the deposition of BBHA and Nannery's attorney, James Vollintine, and in denying their motion to disqualify Vollintine. They argue that Vollintine may have encouraged Nannery and BBHA to abuse process by wrongfully filing an assault action and seeking a temporary restraining order against Steven Munn in order to force his removal by Kanag'iq from the New Stuyahok project.[5]

### A. *Did the Superior Court Err in Quashing Vollintine's Subpoena and Notice of Deposition?*

The Munns sought to depose Vollintine in order to discover whether Vollintine assisted BBHA and Nannery in effectuating an abuse of process. Generally, confidential communications between an attorney and client are protected against public disclosure by the attorney-client privilege. *See* Alaska R.Evid. 503 (Lawyer–Client Privilege). This privilege allows individuals in need of legal assistance to confide in an attorney without the fear that any disclosure will be made public. *United Servs. Auto. Ass'n v. Werley*, 526 P.2d 28, 31 (Alaska 1974).

While the attorney-client privilege protects communications regarding acts which the client may have committed prior to seeking representation, it will not protect communications which "pertain to ongoing or future ... wrongdoing." *Id.* at

---

3. The cases cited by BBHA and Nannery as dispositive of this issue are distinguishable. *Glover v. Western Air Lines, Inc.*, 745 P.2d 1365, 1371 (Alaska 1987) (request for further discovery deemed "perfunctory" where no plan of discovery was set forth); *Brock v. Weaver Bros.*, 640 P.2d 833, 837 (Alaska 1982) (denial of Rule 56(f) request for additional time affirmed where no discovery had been taken during three-year period between accident and resolution of summary judgment motion).

4. Because we hold that the Munns should have been granted a continuance under Rule 56(f), we need not address their argument that a continuance should have been granted pursuant to Civil Rules 1, 6, and 94.

5. Jeannie Munn's abuse of process claim is predicated on the ground that, by forcing her husband's removal, BBHA and Nannery caused her to quit her job as well.

32; *see* Alaska R.Evid. 503(d)(1).[6] The reason for this distinction between "past" and "ongoing or future" wrongdoing is that the privilege is designed to encourage those who may have committed a prior wrong to seek protection of their rights. The attorney-client privilege is not designed to encourage those planning to commit a wrong to obtain legal assistance in their endeavor.

◼ In *Werley*, we ruled that the attorney-client privilege cannot be used to protect communications regarding the commission of a crime or civil fraud occurring during or after the establishment of the attorney-client relationship. 526 P.2d at 32–33. The privilege can be defeated if the party seeking to discover communications between the attorney and the client "present[s] prima facie[7] evidence of the perpetration of a fraud or crime in the attorney-client relationship." *Id.* at 32. Although the fraud or crime must have been contemplated by the client at the time of the communication, *Pritchard–Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 (8th Cir.1984), *cert. dismissed*, 472 U.S. 1022, 105 S.Ct. 3491, 87 L.Ed.2d 625 (1985), it is irrelevant whether the attorney was aware of the client's purpose. *United States v. Horvath*, 731 F.2d 557, 562 (8th Cir.1984); *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1038 (2d Cir.1984); *Coleman v. American Broadcasting Cos.*, 106 F.R.D. 201, 206 n. 5 (D.D.C.1985).

◼ In *Werley* we ruled that an insurer's allegedly tortious conduct in asserting bad faith defenses against a claim for coverage constituted "civil fraud," and that the attorney-client privilege would not protect communications between an attorney and her client relating to that fraud. 526 P.2d at 33. In this case the Munns allege that Vollintine assisted BBHA and Nannery in filing an assault charge against Steven Munn, and in seeking a temporary restraining order against him, for the bad faith purpose of obtaining his removal from the New Stuyahok project. The filing of an assault claim against a person for the purpose of interfering with that person's employment rights comes within the civil fraud exception to the attorney-client privilege.[8] The Munns are therefore entitled to depose Vollintine if they are able to present a prima facie case that BBHA or Nannery consulted Vollintine for the purpose of interfering with the Munns' employment relationships with Kanag'iq.

The superior court quashed the Munns' notice and subpoena for the taking of Vollintine's deposition without considering whether they had made a prima facie showing that the information they sought to discover was not protected by the attorney-client privilege. In light of this fact, we hold that the Munns should be allowed a reasonable time after this case is remanded to the superior court in which to demonstrate that they are entitled to depose Vollintine.

◼ BBHA and Nannery argue that Vollintine cannot be deposed unless the evidence sought to be discovered thereby is unobtainable elsewhere. *See Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986) ("taking of opposing counsel's deposition.... limited to where

---

**6.** Alaska Rule of Evidence 503(d)(1) provides: "There is no privilege under this rule: (1) *Furtherance of Crime or Fraud.* If the services of the lawyer were sought, obtained, or used to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud."

**7.** "A prima facie case is one.... [where] the evidence in favor of a proposition [is] sufficient to support a finding in its favor, if all the evidence to the contrary [is] disregarded." *Werley*, 526 P.2d at 32 n. 15.

**8.** In *Werley* we declined to rule whether communications regarding an ongoing or future tort which did not involve fraud fit within the "civil fraud" exception to the attorney-client privilege. We declined to address this question since "the alleged conduct of the [party seeking to discover the attorney-client communication was found] to be both 'fraudulent' and 'tortious'." 526 P.2d at 32 n. 12. The Munns, too, allege that the communications sought to be discovered were both fraudulent and tortious. Therefore, it is again unnecessary for us to decide whether conduct which is "tortious," but not "fraudulent," falls within the "civil fraud" exception. As we stated in *Werley*, "[s]uch a decision must await an appropriate future case." *Id.*

the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, ... (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case") (citing *Fireman's Fund Ins. Co. v. Superior Court*, 72 Cal.App.3d 786, 140 Cal.Rptr. 677, 679 (1977)); *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 86 (M.D.N.C.1987); *Spectra–Physics, Inc. v. Superior Court*, 198 Cal.App.3d 1487, 244 Cal.Rptr. 258, 262 (1988). We decline to adopt such a rule. Rather, we hold that an attorney is no more entitled to withhold information than any other potential witness, and may be required to testify at a deposition or trial as to material, non-privileged matters. *See In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429, 438 (E.D.Pa.1981); *In re Penn Central Commercial Paper Litigation*, 61 F.R.D. 453, 463 (S.D.N.Y. 1973); *Matter of Roche*, 381 Mass. 624, 411 N.E.2d 466, 473 (1980) ("all persons [are required] to testify at a deposition in the absence of a constitutional, statutory, or common law privilege" [footnotes omitted]). Vollintine may therefore be deposed once the civil fraud exception to the attorney-client privilege is found to apply.[9]

### B. *Did the Superior Court Abuse Its Discretion in Denying Steven Munn's Motion to Disqualify Opposing Attorney Vollintine?*

A trial court's decision concerning a motion to disqualify opposing counsel will only be reversed when it constitutes an abuse of discretion. *Security Gen. Life Ins. Co. v. Superior Court*, 149 Ariz. 332, 718 P.2d 985, 989 (1986).

The Code of Professional Responsibility addresses two types of situations where an attorney may be required to withdraw if he becomes a witness. DR (Disciplinary Rule) 5–102.[10] An attorney is required to withdraw as counsel if "he learns or it is obvious that he ... ought to be called as a witness *on behalf of* his client." DR 5–102(A) (emphasis added), *cited in Murray v. Feight*, 741 P.2d 1148, 1160 (Alaska 1987). An attorney must also withdraw if he "learns or it is obvious that he ... may be called as a witness *other than on behalf of* his client," but *only* at such time as it becomes "apparent that his testimony is or may be prejudicial to his client." DR 5–102(B) (emphasis added). The Munns argue that both of these rules compel Vollintine's disqualification.

---

**9.** He may also be required to testify at trial upon the same showing. *See In re Grand Jury Investigation*, 842 F.2d 1223, 1226–27 (11th Cir. 1987); *Matter of Doe*, 551 F.2d 899, 900–01 (2d Cir.1977); *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 661 F.Supp. 1482, 1486 (N.D.Ill. 1987); *People v. Board*, 656 P.2d 712, 714–15 (Colo.App.1982); *Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich.App. 509, 309 N.W.2d 645, 650 (1981); *State v. Ray*, 36 Or.App. 367, 584 P.2d 362, 364–65 (1978).

**10.** DR 5–102 provides:
(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).
(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than

on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.
DR 5–101(B) provides:
A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

We conclude that they are mistaken and that the superior court did not abuse its discretion in denying their disqualification motion. Vollintine's affidavit that BBHA and Nannery do not intend to call him as a witness on their behalf supports the conclusion that DR 5–102(A) does not apply. The conclusion that DR 5–102(B) does not apply is supported by the absence from the record of any evidence making it apparent that he will be called as a witness "other than on behalf of" his clients *and* that his testimony "is or may be prejudicial to [them]." [11]

We recognize that a party might attempt to disqualify opposing counsel as a tactical weapon. The ethical rules regarding lawyers as witnesses "w[ere] not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel." *Galarowicz v. Ward,* 119 Utah 611, 230 P.2d 576, 580 (1951). A party cannot disqualify an opponent's attorney by making a "mere declaration of an intention to call opposing counsel as a witness," thereby interfering with an opponent's *"right* to the counsel of its choice ... for mere strategic or tactical reasons." *Security Gen. Life Ins. Co.,* 718 P.2d at 988 (emphasis in original). Furthermore, some courts have required that "[w]hen an attorney is to be called other than on behalf of his client, a motion for disqualification must be supported by a showing that ... the evidence is unobtainable elsewhere." *Cottonwood Estates v. Paradise Builders,* 128 Ariz. 99, 624 P.2d 296, 302 (1981), *cited in Security Gen. Life Ins. Co.,* 718 P.2d at 988 (interpreting Model Rules of Professional Conduct Rule 3.7(a)); *Ray v. Stuckey,* 491 So.2d 1211, 1214 (Fla.App.1986) (attorney's testimony must be "indispensable"). We hold that this burden on the disqualification movant is appropriate where the attorney is not a central figure in the litigation.

## VI. SUMMARY.

Vollintine's deposition may be taken once the Munns present prima facie evidence that Vollintine possesses relevant, unprivileged information. Therefore the superior court's order quashing the notice and subpoena for Vollintine's deposition is reversed and vacated. The superior court's order denying the Munns' motion to disqualify Vollintine is affirmed. The superior court's order quashing the notice for Shuler's deposition is reversed.

The order of the superior court granting BBHA and Nannery summary judgment is REVERSED and VACATED and the case REMANDED for proceedings consistent with this opinion.[12]

---

**11.** Even if it becomes obvious that the Munns intend to call Vollintine as a witness, it may not become immediately "apparent" that his testimony is or may be prejudicial to BBHA and Nannery. Vollintine can seek a prior ruling from the superior court as to the admissibility and scope of the requested testimony prior to his giving testimony, thereby possibly obviating any requirement that he withdraw. However, once the question of the propriety of an attorney's continued representation arises, "doubts should be resolved in favor of the lawyer testifying and against his ... continuing as an advocate." Code of Professional Responsibility EC (Ethical Consideration) 5–10.

**12.** In light of this ruling, we also vacate the superior court's award of attorney's fees in favor of BBHA and Nannery.