742 P.2d 292

Jon SELLERS, Michael Butler, Andrew Watzek, Glen Sparks, Brian Miller, Allen McKenzie, Edwin Anthony, Jerry Kimmel, Harry Hawkins, and City of Phoenix, Petitioners,

v.

SUPERIOR COURT OF the STATE of Arizona, In and For the COUNTY OF MARICOPA, Honorable Robert A. Hertzberg, a judge thereof, Respondent Judge.

Max Anderson DUNLAP, Real Party in Interest.

No. 1 CA–SA 147.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 11, 1987.

Jones, Skelton & Hochuli by A. Melvin McDonald, William R. Jones, Jr., Georgia A. Staton, Phoenix, for petitioners.

Murray Miller, P.C. by Murray Miller, Deborah Cole-Williams, Phoenix, for real party in interest.

## OPINION

FIDEL, Judge.

In the tenth week of a bitter trial, which promised to run months longer, a controversy erupted that ended the trial and concluded in the disqualification of the law firm for the eleven defendants. Under questioning by plaintiff's counsel, defendant Jack Weaver testified that his attorneys had shown him certain documents in their offices days before. Plaintiff's counsel sought the documents. Defense counsel denied having them or showing them to Weaver. Three days of hearing followed, in which defense counsel urged and reurged that a mistrial be declared because of the conflict they now faced with Weaver. Plaintiff's counsel expanded the argument to place in question the ethical propriety of the representation of all defendants by a single firm. By the third day all parties agreed, though for different reasons, that a mistrial must be granted. On the third day of hearing, when plaintiff's counsel joined the motion for mistrial, he added the oral motion that counsel for defendants be disqualified from representing any of the defendants in a future trial. Over defendants' objection that a ruling on the second motion was premature and should await further briefing and a hearing, the trial court granted both the mistrial and the motion to disqualify.

The defendants other than Weaver now petition for review of the order of disqualification; they wish to retain their present counsel. Weaver, represented by separate counsel, advises this court by affidavit that he has no objection to his former counsel representing all of his co-defendants and that he "waives unconditionally" any conflicts arising from his former representation. The attorney-client relationship at issue has spanned five years in a case of unusual complexity. To replace counsel now would be extremely costly and disruptive to the parties and the court. We do not presently decide whether or to what

extent an order of disqualification is unavoidable. However, because it appears that disqualification was prematurely ordered and because the moving defendants have no remedy by appeal, we take jurisdiction. *See* Rule 8, Arizona Rules of Procedure for Special Actions. *Alexander v. Superior Ct.*, 141 Ariz. 157, 685 P.2d 1309 (1984).

### The Mistrial and Disqualification

Max Dunlap was tried, convicted, and sentenced to death for the 1976 murder of *Arizona Republic* reporter Don Bolles. Dunlap's conviction was reversed in *State v. Dunlap*, 125 Ariz. 104, 608 P.2d 41 (1980). Charges against him were thereafter dismissed without prejudice and have not been refiled.

In July 1982 Dunlap filed a lawsuit charging the City of Phoenix and twenty-two of its policemen with fraudulent concealment, fraudulent misrepresentation, and conspiracy. Dunlap sought both compensatory and punitive damages. He alleged that the individual defendants, acting within the course and scope of their city employment, deliberately concealed information that would have assisted Dunlap's defense against the Bolles murder charges. Among the alleged objects of concealment were certain index cards leading to the police intelligence files on Kemper Marley, John Harvey Adamson, Mary Adamson, and the Emprise Corporation.

All defendants retained the former law firm of Jones, Teilborg, Sanders, Haga & Parks to represent them. When that firm divided, the newly constituted firm of Jones, Skelton & Hochuli retained their case. The defendants recognized and discussed with counsel at the outset that there were numerous testimonial conflicts among them. Though they agreed that the police intelligence files were purged of certain documents, they disagreed over such matters as who took what purgative steps and upon whose orders. As an example, Weaver claims that he took purgative actions and directed defendant Hawkins to take purgative actions upon the order of Weaver's superior, defendant Sparks. Sparks

denies giving Weaver such an order. Despite such conflicts defendants agreed to proceed with a unified defense by common counsel,[1] and despite such conflicts the Jones firm agreed to present the defense. The thrust of the defense was that files were purged for legitimate law enforcement reasons with no harm intended or done to Max Dunlap.[2]

The case proceeded to trial on January 7, 1987, against the City of Phoenix and ten police officers. The trial court had granted motions for summary judgment in favor of the other ten defendants. Chief trial counsel for plaintiff was Murray Miller, assisted by Deborah Cole-Williams. Chief trial counsel for the defendants was A. Melvin McDonald, assisted by Georgia A. Staton.

On March 10, 1987, defendant Jack Weaver underwent examination by attorney Miller. As Miller questioned him about the missing index cards, Weaver testified that he had recently seen the original Mary Adamson index card at his lawyers' office, though the original was supposedly long lost. He also said that he had seen the original Kemper Marley index card, which varied in certain details from the purported Marley card that had been made a trial exhibit. Miller turned to McDonald in open court and demanded the cards. What the trial court characterized as "a shouting match" ensued. McDonald moved for a mistrial at the bench, arguing that Miller had impugned his credibility before the jury to the detriment of all defendants. The court denied the motion, but offered McDonald the opportunity to take the witness stand to address the suggestion that he had secreted missing cards. McDonald volunteered that it would be "ethically impossible" for him to testify in contradiction of his client Weaver. The court instructed the jury to disregard the exchange of comments between counsel and permitted Miller to continue Weaver's examination.

At the next recess McDonald renewed his motion for mistrial in chambers. Defendant Weaver, who was present, alluded to his testimonial conflict with defendant Sparks:

I have a question as to how [McDonald] can defend me, who says one thing, defends Sparks, who's opposed to me. I would just like it on record that I am uncomfortable with the situation but I am willing to proceed to get this thing over with.

The focus of discussion was not the testimonial conflict among defendants, however, but the conflict between Weaver and McDonald over the question whether Weaver had seen original index cards for Mary Adamson and Kemper Marley in McDonald's office. McDonald stated:

The problem I have got, Judge, I have got nine other clients that now that my integrity has been placed in issue by Mr. Miller's comments in the courtroom in defending my other nine clients, I think I have got the duty to go on and explain to the jury what happened, because this is a case involving alleged cover-ups and it's impossible for me, I think, in representing my other nine clients to have this jury believe that their attorney is part of any cover up, which I am not. . . .

To do that, that places me in a position of impeaching my own client, Jack Weaver, wherein lies the conflict and that's why I think as much as I dread it, there would have to be a mistrial.

In response to McDonald's claim that an untenable conflict with Weaver had arisen, Miller argued that McDonald and his predecessors on the case should have recognized an untenable conflict among defendants from the start. Miller was not yet arguing for disqualification, however; rather he op-

---

1. Jack Weaver joined in this decision after consulting attorney Donald Harris, whom the city retained to act as his advisory counsel, and after lengthy discussions among himself, Harris, and the Jones firm. Harris remained Weaver's advisory counsel throughout these proceedings, although he did not appear at trial until the hearing in chambers on March 11, discussed *infra*.

2. We note, however, that although defendants allege that they acted for legitimate law enforcement reasons, they also deny in their amended answer that they acted within the course and scope of their employment.

posed McDonald's motion for mistrial, taking the position that the present emergence of a conflict which defendants had chosen to ignore should not cause plaintiff the delay and cost of a mistrial.

The trial judge made a determined effort to avoid mistrial by avoiding the necessity of McDonald's testimony before the jury. He took McDonald's testimony in chambers, where he permitted Miller to cross-examine, and he concluded that McDonald did not have and had not shown Weaver the allegedly missing cards. He announced this conclusion to the jury and restricted Miller's effort to question Weaver further about missing cards at the Jones firm office. As proceedings ended on Tuesday, March 10, McDonald's motion for mistrial was denied. However, the court gave McDonald leave to renew the subject after consulting with the defendants other than Weaver. The court also suggested that Weaver consult his independent advisory counsel, Donald Harris, about whether he should continue to be represented by McDonald in light of the conflict that had developed between them.

On Wednesday, March 11, McDonald renewed his motion for mistrial, joined by Donald Harris on behalf of Weaver, and supported by attorney Michael Scott, whom McDonald had engaged to consult independently with the defendants other than Weaver.

Harris told the court that the conflict exposed to date was just "the tip of the iceberg." He concluded:

> At this point in time, I feel, sir, that the firm can no longer, the firm of Jones, Skelton, Hochuli, represent Jack Weaver.
>
> I also state at this time, just so down the road it doesn't come as a surprise, I think if that conflict is apparent, the Court recognizes it and then ultimately decides that there is a conflict that must be resolved by a mistrial, that in futuro there could be no further representation by this law firm as to any of the Defendants.

Scott indicated that he had been brought into the case at about 6:05 on the evening before to consult with the individual defendants other than Weaver, that he had spoken with all but Sparks, McKenzie, and Miller,

> and there was a consensus that they did not want continued representation by Mr. McDonald in this trial before this jury in view of what happened, because—because of the possibility of punitive damages, which I understand could be an issue in this case because counsel has been implicated, I understand this is some sort of allegations of a cover up. And it appears that the cover up has continued through this trial involving their counsel and if that jury should believe that, I think it could be disastrous. So I explained the pros and cons and they said they don't want to roll the dice.

Present at the hearing at McDonald's request was attorney Gary Stuart, a member of the State Bar Committee on Rules of Professional Conduct. During proceedings on the record Stuart made comments to the court concerning ethical rules that the court should consult in resolving the issues that had arisen. The court and Stuart also decided, with the consent of counsel, to engage in private discussion of those rules.

Stuart's reported comments to the court were not limited to the testimonial conflict that had arisen between Weaver and McDonald, but extended to the broader issue of the propriety of McDonald's representation of the defendants as a group. Miller argued on Wednesday, March 11, as he had on Tuesday, March 10, that the Jones firm's representation of all defendants had been inappropriate from the outset of the case. Miller did not yet move, however, that the Jones firm be disqualified. Rather, in response to McDonald's position that Miller had injected untenable conflict into the case, Miller continued to argue that McDonald should have recognized such conflict from the start.

On Thursday, March 12, however, Miller changed his stance. He not only joined in the motion for mistrial, but moved that the Jones firm be immediately disqualified from representing any of the defendants and that each defendant be required to retain independent and separate counsel.

He expressed the concern that, if the motion were denied, further conflict would emerge to sink a second trial or that, if a plaintiff's judgment were obtained, defendants might find a basis to set it aside because of their attorneys' conflict of interest in representing them as a group.

McDonald opposed the motion on behalf of all defendants but Weaver. Those defendants wanted a mistrial, McDonald reiterated, and no longer wished to include Weaver in a common defense; however, they continued, excluding Weaver, to want the Jones firm to defend them at a second trial. Attorney Maurie White, appearing for Michael Scott, independent advisory counsel to those defendants, confirmed to the court that they opposed disqualification. Donald Harris appeared for Weaver and retreated from his position of the previous day. Though Weaver felt a mistrial was necessary, Harris said, and though Weaver no longer felt he could be represented by McDonald, "perhaps with certain safeguards, we would have no problems with Mr. McDonald's law firm going forward and representing the other defendants, if that is their desire." [3]

McDonald urged the court to defer consideration of disqualification until another day. However, the court proceeded to address the issue. The trial judge ordered a mistrial "due to a conflict of interest arising out of the law firm of Jones, Skelton & Hochuli's representation of the defendants here." He ordered that the firm cease its representation of all defendants and that all defendants immediately secure new counsel. He ordered that Weaver obtain different counsel from any other defendant. Although he left open the possibility that the other ten defendants might be represented by common counsel, he or-

dered that all new counsel concern themselves with the question of conflicts among defendants and that Miller file appropriate motions for determination of counsel. Additionally, for the purpose of retrial, the trial judge retracted his finding that the Jones office did not possess the missing index cards and advised that any party might call McDonald, Staton, or other employees of the Jones firm as witnesses on that issue.

### Applicable Ethical Rules

To determine whether the record supports the order of disqualification, we turn to the Arizona Rules of Professional Conduct, Rule 42, 17 A.R.S. Rules of the Supreme Court [hereinafter ER ——.] Though the trial court obviously found total disqualification of the Jones firm unavoidable, it unfortunately failed to state the basis for that finding on the record. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 495 n. 3, 733 P.2d 1073, 1078 n. 3 (1987). Thus we consider each of the applicable ethical rules in turn. We are mindful in so doing of the supreme court's admonition that, in matters of disqualification, "[w]henever possible the courts should endeavor to reach a solution that is least burdensome upon the client or clients." *Alexander v. Superior Ct.*, 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984).

### Multiple Clients in a Single Matter

We first consider the rule concerning representation of multiple clients in a single matter to determine whether adequate support lies there for the trial court's order of disqualification. The applicable ethical rule is ER 1.7(b), which provides:

A lawyer shall not represent a client if the representation of that client may be

**3.** In affidavits prepared after the trial court's order and submitted with the petition for special action, the defendants other than Weaver have confirmed their desire for common representation by McDonald and his firm. Defendants have likewise submitted Weaver's affidavit, prepared after the trial court's order, confirming that Weaver does not object to the Jones firm's continued representation of the other defendants and, indeed, that he "waives unconditionally" any conflicts arising therefrom. De-

fendants made no motion for reconsideration and thus gave the trial judge no opportunity to consider these affidavits. The content of the affidavits was essentially presented to the trial court, however, through oral representations of counsel, with the exception of Weaver's unconditional waiver. Harris's oral representation at the time of hearing, as indicated above, was conditioned upon certain unspecified safeguards to be discussed with McDonald.

materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

The Supreme Court of Oregon has usefully described the content of an adequate explanation:

To satisfy the requirement of full disclosure by a lawyer before undertaking to represent two conflicting interests, it is not sufficient that both parties be informed of the fact that the lawyer is undertaking to represent both of them, but he must explain to them the nature of the conflict of interest in such detail so that they can understand the reasons why it may be desirable for each to have independent counsel, with undivided loyalty to the interest of each of them.

*In re Boivin*, 271 Or. 419, 424, 533 P.2d 171, 174 (1975), *quoted in In re Porter*, 283 Or. 517, 522, 584 P.2d 744, 748 (1978).

The subject of simultaneous representation of parties in testimonial conflict is explicitly addressed in the following portion of the comment to ER 1.7:

An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatability in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question.... On the other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of paragraph (b) are met.

This portion of the comment contemplates an informed risk-benefit balancing approach to the question of joint representation of co-parties with testimonial discrepancies among them. As our supreme court observed in *Alexander:*

Potential benefits that may outweigh the risk of multiple representation include reduced legal fees, the avoidance of unnecessary future conflicts, and, in litigation, the opportunity to present a united front.

141 Ariz. at 162, 685 P.2d at 1314, quoting Moore, *Conflicts of Interest in the Simultaneous Representation of Multiple Clients: A Proposed Solution to the Current Confusion and Controversy*, 61 Tex. L.Rev. 211, 226 (1982).

The rule also contemplates, however, that in some instances of conflict, consensual waiver will not suffice:

[W]hen a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When more than one client is involved, the question of conflict must be resolved as to each client.

ER 1.7 comment. *See also In re Bentley*, 141 Ariz. 593, 596, 688 P.2d 601, 604 (1984) ("Even with full disclosure, not all conflicts may be waived by consent of the parties.") *But see* Moore, *supra*, who criticizes the absence of clear guidelines for determining when a client's consent should be overridden and who recommends that inquiry focus on the client's capacity for informed and voluntary consent.

The comment to ER 1.7 suggests skepticism toward an opponent's motion to disqualify, lest it "be misused as a technique of harassment." *See also Alexander*, 141 Ariz. at 161, 685 P.2d at 1313; *Gomez v. Superior Ct.*, 149 Ariz. 223, 226, 717 P.2d 902, 905 (1986). Disqualification is primarily a question for the lawyer undertaking representation. However, a court may raise the question of disqualification on its own. ER 1.7 comment.

Questions "critical" to an inquiry into the necessity of disqualification are:

the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's indepen-

dent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

ER 1.7 comment.

The trial court made no findings on these questions. Our review of the record suggests, but does not enable us to answer, additional questions pertinent to consideration of disqualification under ER 1.7(b):

1. Was the question of conflict separately resolved as to each client? See ER 1.7 comment.

2. Was there full and adequate disclosure of all aspects and implications of the defendants' conflicting interests and positions? Did such disclosure encompass the divergence of the City's interest and the individual defendants' interests on the issue of course and scope of employment in the event of a liability decision in favor of plaintiff? (*See supra* note 2.) Did such disclosure encompass the divergence of interest among defendants and the potential significance of their testimonial disparities in the event of a jury decision to award punitive damages against some or all of them?

3. Do the joint-defendants' current waivers adequately reduce the risk that the conflicts among them will necessitate a further mistrial? [4]

4. If the Jones firm must unavoidably be disqualified from representing some of the defendants other than Weaver, could it still appropriately represent a second set of those defendants in the event of valid waivers by the first set? Could such waivers be obtained?

■ We do not mean to suggest by listing these questions that they are an exhaustive list of considerations under ER 1.7(b). However, we find that the trial court's failure to provide an opportunity for a briefing and separate hearing on the issue of disqualification deprived the defendants and the court of an opportunity to address questions such as these.

We find no present basis in the record for the conclusion that ER 1.7 supports the trial court's order. Indeed, we are unable to conclude that the trial court *based* its order of disqualification on ER 1.7, inasmuch as the court left open the possibility that the defendants other than Weaver might continue to choose common representation, though from a firm other than Jones, Skelton & Hochuli.

### Conflict Between Weaver and McDonald

We next consider ER 1.9, entitled "Conflict of Interest: Former Client." This rule provides in part:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation....

---

4. In this regard, we note the following argument to the trial court by Mr. McDonald:

There is no question that each of the individuals years ago knew that there was testimonial conflict.... Each of the individual defendants knew that and that's what they had in mind.

The problem—the problem occurred yesterday. All of the other defendants perceived that none of the defendants would jump to the other side, if you will, or that perception, whether it's right or wrong.

Yesterday one of the defendants in the presence of other defendants, and through the drama of Mr. Miller in front of the jury, seeks to discredit the attorney for the other defendants in the presence of the jury....

I indicated to the court then and now that my clients have told me that they had a perception, whether right or wrong, that the conflict that they anticipated five years ago was now different. They didn't anticipate in their perception one of their co-colleagues giving information to somebody that would be planted in the other camp.

Mr. McDonald seems by this argument to have advanced the notion that his clients' former waivers were retractable upon the occurrence of unforeseen events. Are the current waivers likewise regarded by the defendants as conditionally retractable, or are they unconditional? Can a waiver be unconditional under these circumstances?

Upon the declaration of mistrial Jack Weaver had become a former client of the Jones firm. Assuming there to be potentially material adversity between the interests of Weaver and the other defendants upon retrial, we consider the issue of waiver. The comment to ER 1.9 provides in part:

Disqualification from subsequent representation is for the protection of clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer's intended *role in behalf of the new client.*

[2] Weaver has advised this court by affidavit that he unconditionally waives any conflict arising from his former representation by McDonald. As we have indicated, his expression of waiver to this court is considerably firmer than his lawyer's conditional waiver to the trial court. However, the trial court did not probe the adequacy of Weaver's waiver at the time of its decision; nor did it make a finding that the waiver was inadequate or that the conflict was unwaivable. In the absence of such findings, we are unable to sustain the trial court's ruling on the basis of ER 1.9.

### A Lawyer as Witness

We next consider whether disqualification was necessitated by the possibility that Melvin McDonald and his co-counsel Georgia Staton would be witnesses at a future trial. ER 3.7, entitled "Lawyer as Witness," provides as follows:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) The testimony relates to an uncontested issue;

(2) The testimony relates to the nature and value of legal services rendered in the case; or

(3) Disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by ER 1.7 or ER 1.9.

The undesirable impact of a lawyer serving as advocate and witness in the same trial was described by our supreme court:

The attorney who testifies diminishes his effectiveness as advocate as well as his effectiveness as a witness.... Like any witness, the attorney is subject to cross-examination on any relevant matter, Ariz.R.Evid. 611, including the professional and financial interest in the outcome of the litigation, ... and impeachment by the usual methods of demonstrating bias or prejudice.... The advocate *who testifies places himself in the* position of being able to argue his own credibility. This special witness can take the stand, objectively state the facts from personal knowledge, then press home those facts by argument to the jury. Our belief is that an adversary system works best when the roles of the judge, of the attorneys, and of the witnesses are clearly defined. Any mixing of those roles inevitably diminishes the effectiveness of the entire system.

*Cottonwood Estates, Inc. v. Paradise Builders, Inc.,* 128 Ariz. 99, 102–03, 624 P.2d 296, 299–300 (1981) (citations omitted).

The supreme court cautioned that an attorney should not be permitted to name his adversary as a witness as a tactical contrivance to trigger disqualification. The court stated:

When an attorney is to be called other than on behalf of his client, a motion for disqualification must be supported by a showing that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and that the testimony is or may be prejudicial to the testifying attorney's client.

*Id.* at 105, 624 P.2d at 302.

The first of these criteria, the materiality of the testimony, is contested by McDonald on appeal. We note, however, that McDonald told the trial court, when seeking a mistrial, that his testimony "would not relate to an uncontested issue. This is one of the critical issues of their case." The third criterion, the possibility of prejudice to a client, is met in light of the directly contra-

dictory positions taken by Weaver and McDonald on the subject of the missing index cards. The second criterion, the unobtainability of evidence elsewhere, is disputed. McDonald argues that a paralegal in his office could adequately testify instead of Staton or himself concerning the presence or absence of index cards in their firm's case file. Miller argues, however, that the paralegal, McDonald, and Staton were each present at different times when Weaver was shown index cards, that none was present the entire time, and that each is a material witness.

The trial court did not expressly resolve that the testimony of McDonald and/or Staton is unobtainable elsewhere. Even if this issue were resolved against defendants, however, that finding would not conclude the inquiry. Disqualification does not follow automatically under ER 3.7 when the advocate must also serve as witness. The rule recognizes a "substantial hardship" exception. ER 3.7(a)(3). In this case there is clearly an issue of substantial hardship to defendants in losing the services of McDonald, Staton, and the Jones firm. The trial court did not address this hardship issue in its ruling or articulate any overriding considerations.

The question arises, however, whether the substantial hardship exception applies in circumstances such as these. In *Cottonwood*, the supreme court discussed the disciplinary rules, Rule 29(a), Arizona Rules of the Supreme Court, which preceded our current Rules of Professional Conduct, adopted in 1985. The court noted that the "substantial hardship" exception applied where an attorney would be called on behalf of his client, but that no exception to disqualification existed where an attorney or a member of his firm would be called "other than on behalf of his client and it appears the testimony is or may be prejudicial to his client." *Cottonwood*, 128 Ariz. at 104, 624 P.2d at 301, citing DR 5–101(B). The text of current ER 3.7 does not distinguish between testimony favorable to the lawyer's client and testimony prejudicial to the lawyer's client in defining the application of the substantial hardship exception. The comment to ER 3.7 states in part:

Whether the combination of roles involves an improper conflict of interest with respect to the client is determined by ER 1.7 or 1.9. For example, if there is likely to be substantial conflict between the testimony of the client and that of the lawyer or a member of the lawyer's firm, the representation is improper. The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party....

■ If McDonald and Staton testify, their testimony could contradict and may prejudice their former client Weaver. Under the former Code of Professional Responsibility, no substantial hardship exception would have applied. *Cottonwood*, 128 Ariz. at 104, 624 P.2d at 301. However, under ER 3.7, we perceive the issue whether consideration of "substantial hardship" is appropriate in circumstances of potential prejudice to a former client or whether inquiry shifts entirely to the considerations outlined in previous discussion of ER 1.7 and 1.9, including the question of fully informed consent. This issue was not briefed or argued to the trial court or to this court; thus we do no more than identify it to assist the court and counsel in a full visitation of the issues upon remand.

### Appearance of Impropriety

■ We turn finally to the question of appearance of impropriety as a potential basis for sustaining the order of disqualification. The prohibition against "appearance of impropriety," previously embodied in Canon 9 of the Code of Professional Responsibility, does not appear within the Rules of Professional Conduct. According to our supreme court, it "survives as a part of conflict of interest and ... should be enough to cause an attorney to closely scrutinize his conduct." *Gomez v. Superior Ct.*, 149 Ariz. 223, 225, 717 P.2d 902, 904 (1986). However, it is "simply too slender a reed on which to rest a disqualification order except in the rarest of cases." *Id.*, quoting *Board of Education v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir.1979).

The court announced in *Alexander*, 141 Ariz. at 165, 685 P.2d at 1317, and reiterated in *Gomez*, 149 Ariz. at 226, 717 P.2d at 905, questions which a court should consider in addressing a motion for disqualification based upon the appearance of impropriety:

(1) whether the motion is being made for the purposes of harassing the defendant, (2) whether the party bringing the motion will be damaged in some way if the motion is not granted, (3) whether there are any alternative solutions, or is the proposed solution the least damaging possible under the circumstances, and (4) whether the possibility of public suspicion will outweigh any benefits that might accrue due to continued representation.

The first three considerations are akin to those we have outlined in discussing the applicable ethical rules. The fourth, public suspicion, was not addressed by the trial court, and we are unable to assess to what extent, if any, it weighed in the trial court's decision. Nor have counsel briefed or argued *whether, if there were a fully informed choice of counsel, that choice might be overridden by the factor of public suspicion.* We are unable to conclude on the present record that this is one of those "rarest of cases" in which an order of disqualification may rest on the appearance of impropriety.

## Conclusion

We are reluctant to require the trial court to conduct a further hearing on the question of disqualification when the court has already patiently permitted the parties three days in the midst of trial to bring that question to a head. Yet it is apparent in reviewing the transcript that, for most of the three day hearing, the subject of mistrial held center stage; it was only on the last day that the subject of disqualification emerged from the background. At that time the parties lacked the opportunity for detailed briefing and argument of the complex issues of disqualification, and the trial court lacked the benefit of such a presentation. Both the court and the defendants were entitled to adequate notice and a full hearing on these issues. For that reason, we grant review, vacate the order of disqualification, and remand for the trial court's further determination of the subject.

GRANT, P.J., and BROOKS, J., concur.