[No. B210459. Second Dist., Div. Eight. Nov. 12, 2009.]

STATE OF ARIZONA ex rel. ARIZONA DEPARTMENT OF REVENUE, Plaintiff and Appellant, v.
JEAN YUEN, Defendant and Respondent.

COUNSEL

The Guerrini Law Firm, John D. Guerrini and David Brand for Plaintiff and Appellant.

Law Offices of J. Steven Kennedy and J. Steven Kennedy for Defendant and Respondent.

**OPINION**

**FLIER, J.**—The State of Arizona (Arizona) appeals from orders granting the motion of respondent Jean Yuen to vacate a sister state judgment, which originated in the superior court for the State of Arizona, and denying Arizona's motion for reconsideration. The trial court found Yuen had been deprived of a fair trial in the Arizona proceedings and had a proper defense to the entry of the sister state judgment. Arizona contends the trial court abused its discretion in refusing to give full faith and credit to a final sister state judgment. We affirm, holding the trial court did not abuse its discretion in vacating the judgment.

## FACTS AND PROCEDURAL HISTORY

1. *Entry of Sister State Judgment*

In August 2007, Arizona initiated the present proceeding in the Superior Court of Los Angeles County, when it applied for entry of judgment on a

sister state judgment in the amount of about $682,000 against Yuen. An attorney for Arizona signed an affidavit attesting that in 2000 the Arizona Corporation Commission had obtained a judgment in Arizona against Yuen. The judgment amounted to approximately $436,000, with accrued interest of about $246,000, and Arizona purportedly had received nothing from Yuen on the debt. The Clerk of the Los Angeles Superior Court entered a judgment by clerk on a sister state judgment in August 2007.

## 2. *Motion to Vacate Clerk's Judgment*

In March 2008, Yuen moved to vacate the clerk's judgment.[1] Her declaration in support of the motion stated as follows.

Yuen was briefly involved with an entity known as Forex Investment Services Corporation (FISC). FISC attempted to open offices in Phoenix in approximately 1997. Yuen became involved with FISC through a friend, Win Ming Tam (Tam).

In 1996, Yuen and her three children were living in San Francisco with her in-laws. Yuen's husband, Scott, was spending about one-half of his time in China for his business of exporting California wines to China. About this time, Scott Yuen told his wife a colleague, Sammy Lee Chun Wing (Wing), needed help in opening a currency trading business in Arizona. Because he was often out of the country for his business, Scott Yuen asked his wife to be the incorporating person for Wing's business.

At her husband's request, Yuen signed articles of incorporation to form FISC in Maricopa County, Arizona. Although she did not recall it, Yuen was also listed as the secretary for FISC. Yuen decided to disengage from FISC shortly afterwards. As a consequence, Yuen was never involved in any activities of FISC.

Yuen never owned any FISC stock or directed the company's activities, supervised its employees or arranged or opened accounts for its customers. Yuen never traveled to, resided in or conducted business in Arizona in 1997 or at any relevant time. She never conducted business for FISC even by telephone from San Francisco. She never received any monies from FISC and had "no idea what was going on, if anything with the company." Yuen's only involvement with FISC was as incorporator. She had no experience nor any employment, education or training in financial matters, and particularly not in monetary matters. Throughout this period, she was a housewife in San Francisco raising three young boys.

---

[1] Arizona makes no contention that the motion was untimely.

Around 1997, Tam called Yuen and told her there was a "problem" with the Arizona company and an attorney in Arizona needed to speak with her. At Tam's request, Yuen went to Tam's office in San Francisco and had a "conference call" with an attorney in Arizona.[2] Yuen stated she did not retain the Arizona attorney and did not pay him. She received no documents from the Arizona attorney or authorized him to appear on her behalf. She never received or sent any correspondence to the Arizona attorney. Other than the conference call, she never spoke with the Arizona attorney.

After the telephone conference call, Yuen heard nothing else about the FISC matter for the next "approximately ten years."

In July 2007, Yuen received a letter from a California attorney. The letter notified Yuen that Arizona had a monetary claim against her. The attorney attached a copy of an opinion and order of the Arizona Corporation Commission to his letter. Until Yuen read the opinion, she was not aware of any of the facts or findings contained in the opinion. This was the first time Yuen learned of any adverse proceedings against her in Arizona.

Yuen immediately retained an attorney to respond to the demand letter. Yuen stated she was not served with any application for entry of sister state judgment or any notice of entry of judgment. She first became aware of the existence of a California judgment against her when a bank gave notice that it had turned over funds in response to a writ of execution.

3.   *Opposition to Motion to Vacate Judgment*

In opposition to Yuen's motion to vacate, Arizona asked the court to take judicial notice of certified copies of various documents from proceedings in Arizona, including certified copies of a July 1998 letter from Arizona's counsel to the Arizona Corporation Commission hearing officer, a procedural order of the Arizona Corporation Commission, an administrative order issued by the Arizona Corporation Commission, and a minute order and judgment entered by the Maricopa County Superior Court in Arizona.

The July 1998 letter written by counsel for Arizona to the hearing officer for the Arizona Corporation Commission referred to partial written waivers of conflict of interest that had been executed by one of the 13 respondents (Simmons) in the Arizona proceedings. Yuen was one of the 13 named respondents in the proceeding brought by Arizona. The letter written on behalf of Arizona alerted the hearing officer to potential "conflict of interest

---

[2] As related below, it is clear this "conference call" was actually a telephonic deposition of Yuen conducted by Arizona's counsel from Arizona. This deposition occurred in May 1998.

issues" that counsel believed might result in "material breaches of procedural due process and/or state supreme court professional conduct rules."

Specifically, counsel for Arizona raised a concern after reviewing Simmons's partial written waivers. The letter requested that the hearing officer develop a record in order to comply with Arizona Rules of Professional Conduct, rule 42 of the Supreme Court Rules (ER) and decisional law, namely, *Sellers v. Superior Court* (Ct.App. 1987) 154 Ariz. 281 [742 P.2d 292] (*Sellers*), regarding potential conflicts of interests. Arizona's counsel asked the hearing officer to conduct a "*Sellers*-type inquiry" at an upcoming prehearing conference and make certain findings, including "whether there are adverse conflicts of interest between any other Respondents represented by the same counsel that may hereafter prejudice any such Respondent during these proceedings." (See *id.*, 742 P.2d at pp. 297–298.)

The subsequent Arizona Corporation Commission procedural order reflects that a prehearing conference was held in July 1998 at which all respondents, purportedly including Yuen and excepting Simmons, were represented by Attorneys Alan S. Baskin of the Arizona law firm of Roshka Heyman & Dewulf, PLC (Baskin) and Chris Youtz of the Seattle, Washington, law firm of Sirianni & Youtz (Youtz). The procedural order indicates the commission found a written waiver of a conflict of interest regarding Baskin and a partial written waiver of a conflict of interest regarding Youtz were issued "as a result of a fully informed and voluntary decision by . . . Simmons." However, the commission found "there was presented no evidence of adverse conflicts of interest between any other Respondents" and that "[t]he parties acknowledged that they had no knowledge of any unresolved conflict or potential conflict of interest."

### 4. *Reply to Opposition*

In her reply papers in support of the motion to vacate, Yuen argued that Baskin purported to represent all but one of the respondents, including Tam and Yuen, in the Arizona proceedings and that Arizona was aware that counsel's representation of multiple respondents created a conflict of interest under the governing authorities. Yuen argued the existing rules of professional conduct and Arizona case authority required both the *informed consent* of, and a *written authorization* from, the client to waive any conflict of interest. Because none was obtained from Yuen, she contended she was denied a fair trial.

Yuen asserted that although the hearing officer was made aware of an obvious conflict of interest among the respondents, the record showed the effort to address the conflicts was "little more than a sham." She argued

sufficient findings were never made in the Arizona proceeding establishing compliance with the ethical rules of professional conduct. Arizona's counsel purportedly was in receipt of written waivers of conflict of interest from Simmons, the only respondent not represented by Baskin and Youtz, but there was no showing written waivers of conflict of interest were executed by any other respondent.

Yuen asserted that the only findings of fact in the procedural order concerned the *absence* of any evidence of a conflict; moreover, although the procedural order also recited that "[t]he parties acknowledged that they had no knowledge of any unresolved conflict or potential conflict of interest," the order on its face showed no respondent was personally present at the prehearing conference. Yuen pointed out any "acknowledgment" regarding a conflict of interest was made by the attorney who purported to represent her, and it was not based on any statement actually made by Yuen herself.

### 5. *Order Vacating Judgment*

The trial court granted the motion to vacate the sister state judgment against Yuen, finding she established she was deprived of a fair trial in the Arizona proceedings and had a proper defense to the entry of the sister state judgment. The court relied on Yuen's declaration that she had only minimal involvement with FISC in 1997. More importantly, the court found Yuen never had actual notice of the administrative proceedings before the Arizona Corporation Commission and never retained Baskin as her attorney or authorized him to represent her. The court was persuaded that Yuen was never presented with a written waiver of conflict of interest nor executed such a document.

### 6. *Motion for Reconsideration, Denial and Appeal*

Arizona moved for reconsideration, submitting for the first time a copy of Yuen's deposition taken in the Arizona proceeding. The transcript of the deposition disclosed that Yuen's deposition was taken over the telephone by an attorney from the Securities Division of the Arizona Corporation Commission.[3] The transcript indicated Yuen testified from an office in San Francisco, and Attorney Youtz was present in the San Francisco office with Yuen when her deposition was taken. During the deposition, Arizona's counsel asked a single question relating to a possible "conflict of interest." Examining counsel

---

[3] As noted, this telephonic deposition apparently was the "conference call" with an Arizona attorney that Yuen referred to in her declaration in support of her motion to vacate. Yuen's deposition was taken by the same attorney for Arizona who wrote to the hearing officer a few months later to alert the officer to potential conflicts of interest in multiple respondents being represented by a single attorney.

stated and inquired, "You are being counseled here today by Mr. Youtz, who is also representing other persons in this matter. Are you aware of the possible conflicts and risks that may arise from multiple representation by an attorney in a matter such as this?" Yuen replied, "Yes." Arizona counsel did not explain what "possible conflicts" or "risks" might result from Youtz's representation of multiple "persons," nor did he at any point inform Yuen, a nonnative English speaker, that she was being deposed as a party respondent. He simply asked Yuen, "Do you still wish to proceed today with Mr. Youtz as counsel?" And Yuen ultimately responded, "Yes."[4]

Counsel for Arizona argued the deposition showed Yuen was aware of the Arizona action, which allegedly contradicted her declaration that she did not know of that action.

Opposing the motion for reconsideration, Yuen argued the evidence had been available to Arizona at the time of the original motion, and the deposition in any event was consistent with her declaration and only underscored the attorney's unresolved conflict of interest in purporting to represent both Yuen and her corespondents without obtaining the proper waiver. Yuen submitted a declaration in opposition to the motion for reconsideration, declaring: Tam told Yuen there was a problem with FISC; an attorney in Arizona wanted to speak to Yuen; she went to Tam's San Francisco office and was introduced to "an attorney for FISC"; she was told she was required to answer questions for FISC because her name had been associated with FISC; and the attorney, whom she now understands was Youtz, represented her in the deposition as the attorney for FISC. Yuen declared that when she answered "yes" in her deposition to the question about "possible conflicts," she did not completely understand what that meant; she answered "yes" because she understood that Youtz, as the attorney for FISC, was "a proper person to assist me in the deposition." Yuen asserted, "At no time was it ever explained to me that I was being personally prosecuted in any way or that I needed an attorney to represent me personally. I was only told there was a problem with FISC." Yuen reiterated that, after the "telephone conference," which she now understood was actually a telephonic deposition, she "heard nothing else about the FISC problems until receiving [counsel for Arizona's] letter demanding money from me personally, shortly after July 15, 2007."

The trial court denied the motion for reconsideration. The court found Arizona had failed to offer sufficient evidence to justify reconsideration and, in any case, Yuen's deposition was not inconsistent with her declaration and

---

[4] Youtz appeared *pro hac vice* in the Arizona proceedings and appointed Baskin as local counsel in Arizona. Youtz subsequently withdrew as attorney at the July 1998 prehearing conference because of Simmons's only partial written waiver of a conflict of interest. The withdrawal left Baskin as sole purported counsel for 12 of the respondents, including Yuen.

there was no evidence Yuen ever executed a conflict of interest waiver form or authorized Attorney Baskin to represent her in the underlying Arizona action.

Arizona timely appealed from the orders.

## STANDARD OF REVIEW

A ruling on a motion to vacate a judgment rests in the sound discretion of the trial court. (*Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 89 [15 Cal.Rptr.2d 585] (*Tsakos*).) We will not reverse the exercise of such discretion except when there is clear abuse. (*Ibid.*) We view all factual matters in the light most favorable to the prevailing party. (*Ibid.*)

"Even though contrary findings *could* have been made, an appellate court should defer to the factual determinations made by the trial court . . . ." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [243 Cal.Rptr. 902, 749 P.2d 339].) Moreover, when substantial evidence supports the trial court's order, there is no abuse of discretion. (*In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 839 [269 Cal.Rptr. 624].)

## DISCUSSION

Viewing the record in the light most favorable to Yuen, we hold the trial court did not abuse its discretion in vacating the judgment and in denying the motion for reconsideration. The court found that Yuen (1) had no notice of the Arizona administrative proceedings; (2) did not retain Baskin as her attorney; and (3) never signed a written waiver of Baskin's conflict of interest in representing clients with opposing interests.

### 1. *Denial of Due Process*

The evidence before the trial court demonstrates Yuen was denied procedural due process and a fair trial under the Fifth Amendment and Fourteenth Amendment to the United States Constitution justifying the order vacating the judgment.

Pursuant to Code of Civil Procedure section 1710.40, a sister state judgment entered by the clerk may be vacated "on any ground which would be a defense to an action in this state on the sister state judgment . . . ." We are satisfied that Yuen made the proper showing for relief under this section.

■ Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 70 S.Ct. 652]; see also *Mervyn's, Inc. v. Superior Court* (1985) 144 Ariz. 297, 301 [697 P.2d 690].) Further, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 96 S.Ct. 893].)

■ Under the full faith and credit clause (U.S. Const., art. IV, § 1), "a judgment entered by one state must be recognized by another state if the state of rendition had jurisdiction over the parties and the subject matter and all interested parties were given reasonable notice and opportunity to be heard." (*World Wide Imports, Inc. v. Bartel* (1983) 145 Cal.App.3d 1006, 1010 [193 Cal.Rptr. 830], citing *Durfee v. Duke* (1963) 375 U.S. 106, 116 [11 L.Ed.2d 186, 84 S.Ct. 242].) When jurisdiction over the parties or subject matter is lacking, there is an entire absence of power to hear or determine the case. (*Airlines Reporting Corp. v. Renda* (2009) 177 Cal.App.4th 14, 19–20 [99 Cal.Rptr.3d 66]; see *Milliken v. Meyer* (1940) 311 U.S. 457, 462 [85 L.Ed. 278, 61 S.Ct. 339].) Because a judgment of a court lacking personal jurisdiction violates due process, it is null and void everywhere, including the state where it was rendered. (*Burnham v. Superior Court of Cal., Marin County* (1990) 495 U.S. 604, 609 [109 L.Ed.2d 631, 110 S.Ct. 2105]; *Yu v. Signet Bank/Virginia* (1999) 69 Cal.App.4th 1377, 1385 [82 Cal.Rptr.2d 304].)

Whether Arizona had jurisdiction to render a judgment against Yuen was placed in issue in the court below by Arizona's assertion that full faith and credit must be given to its Arizona judgment. In this case, Yuen declared she was unaware of the Arizona proceedings against her, had no reason to believe her deposition was taken as a party to the proceedings, and was never served as a party to the Arizona proceedings. Arizona asserts that the procedural order issued by the Arizona Corporation Commission is "res judicata," the order determined that "all conflict issues had been resolved," and Yuen "had notice" when she gave a deposition in the Arizona proceedings. These assertions are not supported by our examination of the record.

■ On the record before us, Arizona failed to give Yuen appropriate notice of the charges and proceedings against her and, as we explain below, the hearing officer determined there were no other conflicts of interest solely on the basis of representations made by attorneys who did not represent Yuen as a party respondent in the Arizona proceedings and who in any case had

unresolved conflicts of interests. Furthermore, as we also explain below, Yuen's deposition failed to give her notice of the charges and proceedings against her personally.

Yuen simply did not have her day in court in the Arizona proceedings. Nowhere in the record before us is there any indication that the Arizona Corporation Commission or Arizona courts determined whether Yuen had notice of the proceedings against her or whether Arizona properly obtained jurisdiction over her person. Nor has Arizona provided evidence, such as a proof of service in the Arizona proceedings, indicating appropriate service in fact was made upon Yuen. We may infer from Arizona counsel's failure to attach any proof of such service to his multiple declarations proffered to the court below that none in fact exists.

Arizona provided no document establishing Yuen was aware of the proceedings against her before the Arizona Corporation Commission or the court proceedings purportedly brought on her behalf to challenge the Commission's subsequent adverse decision. (See *E. Vanguard Forex, Ltd. v. Arizona Corp. Comm'n* (2003) 206 Ariz. 399 [79 P.3d 86].) In that regard, in support of its motion for reconsideration, Arizona provided an affidavit of an assistant attorney general in the tax, bankruptcy and collection section of the Arizona Attorney General's Office, the same attorney who signed the affidavit to obtain the clerk's entry of judgment. The affiant stated he "began to search the administrative records" after learning the Los Angeles Superior Court had not given full faith and credit to the Arizona judgment. He stated he found administrative service of process was made "several times" upon Yuen giving her notice of the charges and right to a hearing. Yet he failed to attach any such claimed proofs of service to his affidavit to support this assertion. The trial court could properly have rejected such an unsubstantiated affidavit and inferred from the omission of such proofs that service upon Yuen was never effected or never properly effected in the Arizona proceeding.

The entire record supports the findings that Yuen was never served as a party in the Arizona proceeding and her purported counsel had unresolved conflicts of interest in representing her. We are bound by the factual findings of the trial court. (See *Shamblin v. Brattain, supra,* 44 Cal.3d at p. 479.) We therefore hold the trial court did not abuse its discretion in granting the motion to vacate the sister state judgment since it is void and a nullity as against Yuen.

## 2. *Conflict of Interest*

As a separate and additional reason to vacate the Arizona judgment, even if it were assumed there was jurisdiction to proceed against her, Yuen did not receive a fair trial because of her purported counsel's unresolved conflict of interest.

■ Arizona specifically regulates an attorney's representation of multiple clients in a single matter. In 1998, former ER 1.7(b) provided: "(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client . . . unless: [¶] (1) the lawyer reasonably believes the representation will not be adversely affected; and [¶] (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved." Under the applicable Arizona ethics rule in force during the pendency of the Arizona proceeding, an attorney could not represent a client if his representation would be materially limited by his responsibilities to another client, unless *each* client consented *after consultation.*

The notes to former ER 1.7 noted that "[a]s a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent. . . . [¶] Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of conduct for the client because of the lawyer's other responsibilities or interests." Furthermore, "[w]hen more than one client is involved, the question of conflict must be resolved as to *each* client." (Italics added.)

■ Under case law interpreting former ER 1.7, the attorney's consultation with the client also must include complete disclosure. In *Sellers, supra,* 742 P.2d 292, the court explained that " '[t]o satisfy the requirement of full disclosure by a lawyer before undertaking to represent two conflicting interests, it is not sufficient that both parties be informed of the fact that the lawyer is undertaking to represent both of them, but he must explain to them the nature of the conflict of interest in such detail so that they can understand the reasons why it may be desirable for each to have independent counsel, with undivided loyalty to the interest of each of them.' " (*Id.* at p. 297, quoting *In re Boivin* (1975) 271 Or. 419, 424 [533 P.2d 171].) Additionally, an implied consent of a client is insufficient to resolve a conflict. Under former ER 1.7, the attorney must obtain a *written* waiver from his client. (*In re Neville* (1985) 147 Ariz. 106, 115 & fn. 6 [708 P.2d 1297] [absent a writing, attorney cannot prove client's consent to conflict of interest was "voluntary and knowing"].)

■ Moreover, there are certain circumstances, like the case here, when even the consent of a client is insufficient to overcome an attorney's conflict of interest. The note to former ER 1.7 elucidated that even if a client consents to representation notwithstanding a conflict, "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent." The note further declared that "[a]n impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question." (See *In re Shannon* (1994) 179 Ariz. 52, 60–63 [876 P.2d 548, 556–559] [attorney's joint representation created impermissible conflict of interest when, among other things, paying client's strategy was to lay responsibility at doorstep of some other third party, with nonpaying client as the likely third party; attorney's oral statement to nonpaying client that he would have to withdraw if a conflict arose and client would have to seek other counsel was wholly insufficient to meet ethical requirements].)

Effective December 1, 2003, ER 1.7 was amended to set forth expressly the attorney's obligations when faced with a conflict of interest. ER 1.7(a) presently provides: "Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." ER 1.7(a) defines a "concurrent conflict of interest" as including circumstances in which "the representation of one client will be directly adverse to another client . . ." or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . ." (ER 1.7(a)(1), (2).) Subdivision (b) of ER 1.7 allows an attorney to represent a client notwithstanding a concurrent conflict of interest if (1) the attorney reasonably believes he or she will be able to provide competent and diligent representation to each affected client, (2) the representation is not prohibited by law, and (3) the representation does not involve the assertion of a claim by one client against another client represented by the attorney in the same litigation or other proceeding before a tribunal. However, each affected client must give his or her *informed consent* and the informed consent must be *confirmed in writing*. (ER 1.7(b).)

The comment to the 2003 amendment of ER 1.7 states that "[i]nformed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client." (Comment, ¶ 18.) The writing evidencing the informed consent "may consist of a document executed by the client or oral consent that the lawyer promptly records and transmits to the client." (Comment, ¶ 20.) Moreover, "[i]f it is not feasible to

obtain or transmit the writing at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter." (*Ibid.*) The comment explains that "the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing." (*Ibid.*)

In the present case, Tam provided damning testimony against Yuen implicating her in FISC's allegedly fraudulent off-exchange currency trading. Tam's testimony that Yuen took an active role in controlling FISC was wholly inconsistent with Yuen's declaration that she merely signed incorporation papers as an accommodation and shortly afterwards disengaged from FISC taking no active role. Tam took the position that Yuen was an "owner" of FISC and he "consulted" with the owners on all major decisions, including hiring and terminating employees. He testified that Yuen was an officer, director and half owner of FISC and, as such, she possessed, and actually exercised, power to directly or indirectly control or influence the general affairs and policy of FISC. Tam asserted that Yuen consulted with Tam and approved major decisions affecting FISC.

Baskin, and Youtz until his withdrawal, could not have reasonably believed representing another client with such sharply conflicting testimony and interests would not adversely affect Yuen. There was a complete absence of any evidence these attorneys consulted with Yuen, provided her with any "explanation of the implications of the common representation and the advantages and risks involved" or obtained her informed consent to any conflict of interest. Nothing in the record before us indicates there was any written waiver by Yuen to the conflict presented.

The record is utterly bereft of any showing that Yuen was aware of the relevant circumstances, much less of the material and foreseeable ways that a conflict of interest, particularly with Tam, could have adverse effects on her interests. Arizona proffered no writing executed by Yuen consenting to this conflicting representation or made any showing that she orally consented and the consent was confirmed in writing. There was no evidence Yuen knew of a conflict of interest, received any explanation of the implications of common representation or received a written confirmation of such advice.

Although Yuen appears to have orally consented to have Youtz represent her at deposition, there is no showing Youtz made the appropriate disclosures or obtained her written consent to the conflict of interest. In representing Yuen as a witness at her deposition, Youtz was faced with the same ethical obligations of consent and disclosure as he would have in representing her as a party respondent.

We note that, even though he had an opportunity to do· so, at no time during Yuen's deposition did counsel for Arizona inform Yuen she was a named respondent in the proceeding. He expressly referred to her as a "deponent" and gave her no reason to believe she was being deposed as other than a mere percipient witness. Although the caption page later affixed to the deposition transcript listed Yuen as a respondent, significantly, the transcript is not signed by Yuen, and there is no showing she was ever presented with a copy of the transcript containing the caption.

Tam's testimony was apparently the primary evidence tying Yuen to the Arizona enterprise. Arizona was fully aware there was a conflict of interest between Tam and Yuen, as demonstrated by its July 1998 letter calling the hearing officer's attention to this issue. However, Arizona did not test Tam's testimony, nor did Attorney Baskin, who had an obvious conflict in simultaneously representing both Yuen and Tam. Counsel for Arizona had warned the hearing officer that such a conflict of interest could result in "material breaches of procedural due process and/or state supreme court professional conduct rules," and the trial court obviously found such was the case here.

Notwithstanding that warning, the hearing officer held a prehearing conference in which she accepted a written waiver of a conflict of interest from respondent Simmons but not from Yuen or any other respondent. The hearing officer simply concluded that "there was presented no evidence of adverse conflicts of interest between any other Respondents." The officer could not properly make such a finding because Arizona law required informed consent and written waivers from *each* client under the circumstances. Because no respondent was present at the hearing, her conclusion that "the parties acknowledged they had no knowledge of any unresolved conflict or potential conflict of interest" was clearly based solely upon the representations made by counsel, who did not have authority to represent Yuen.

█ Even if Youtz or Baskin had obtained Yuen's informed written consent, it is questionable whether they or any attorney could properly represent both Yuen and Tam simultaneously under the state of affairs indicated by this record. Under Arizona law, " '[w]hen a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent.' " (*Sellers, supra*, 742 P.2d at p. 297.)

This case is similar to *Tsakos, supra*, 12 Cal.App.4th 74, in which the court held that "when 'there is an actual, present, existing conflict and the discharge of duty to one client conflicts with the duty to another,' " counsel's failure to disclose a conflict of interest to the client results in a denial of a fair trial to

the defendant, and a windfall to the plaintiff, in the underlying litigation justifying the grant of a motion to vacate the judgment. (*Id.* at pp. 96–97.)

## DISPOSITION

The orders are affirmed. Yuen is to recover costs on appeal.

Rubin, Acting P. J., and Mohr, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.